## The Chattanooga, Rome and Columbus Railroad Company v. Jackson.

1. Amendment of a declaration against the Chattanooga, Rome & Carrollton Railroad Company by substituting "Columbus" for "Carrollton" so as to give the defendant its proper corporate name, was not adding a new party but simply correcting a misnomer.

2. After the allowance of the amendment, it was not error to require the defendant to go to trial, its counsel not stating that they were less prepared for trial, nor giving any reason why the trial should not proceed except that a new party had been entered as to which this was the appearance term, and it appearing from the record that the defendant's counsel recognized that the true defendant had been sued and served, by acknowledging service on its behalf and filing pleas of abatement in its name.

3. While the judge might have resorted alone to the statutes of Tennessee, and the decisions of its Supreme Court it was not error to receive, in addition to those statutes and decisions, the testimony of skilled attorneys who practiced in the courts of that State, to aid him in arriving at a proper conclusion as to what was the law of that State, and especially as to the practice of the courts thereof in regard to appeals and their dismissal.

4. In Tennessee, an appeal from a justice's court to the circuit court does not merely suspend, but vacates, the judgment; and the dismissal of an appeal in vacation was unauthorized and had no effect. Where the appellant at the succeeding term of the circuit court took an order making the dismissal the judgment of that court and affirming the judgment of the justice's court, and then the appellee, by order of the circuit court, dismissed his case against the appellant, the latter order was irregular but not void, and must be construed to revoke or annul the former. The exercise of the jurisdiction may have been suspended upon the dismissal of the appeal, but the jurisdiction itself was not suspended but was retained by the court until the case was finally disposed of.

(a) Though it does not appear by the record that any notice was given to the appellant of the action of the court in thus resuming its jurisdiction, it will be presumed that, according to the practice of the court, no such notice was necessary, or that if necessary, it was in fact given.

(b) Though it appears that after the dismissal of his case by the appellee, the amount awarded to him in the justice's court was paid into the clerk's office of the circuit court, it does not appear that the appellee ever received the money, nor that the clerk was the proper person to receive it.

5. The pendency of a prior suit in one State cannot be pleaded in abatement of a suit between the same parties for the same cause in a court of another State.
6. The discretion of the judge in overruling the ground for new trial that the verdict was contrary to law and evidence, was not abused.
February 23, 1891. By two Justices.

Railroads. Amendment. Parties. Practice. Evidence. Pleadings. Abatement. Judgments. Jurisdiction. Notice. *Lis pendens.* New trial. Before Judge MADDOX. Walker superior court. February term, 1890.

To the report contained in the decision it is only necessary to add that under the plea of the general issue the testimony for the plaintiff tended to show the following: While he was returning home from Chattanooga he had to cross the railroad at a public crossing, then drive along the road and cross the railroad again at another public crossing a short distance from the first. There was a private road along the side of the railroad from which he first had to cross, extending to that portion of the public road which he reached by crossing the railroad the second time, but on account of its condition it was not practicable for him to use it. The second crossing was defective in that there were no planks laid to facilitate the passage of vehicles over the railroad track, and because the space between the ties outside the rails, and up to the rails, had not been filled with dirt or in any other way, and because the public road and railroad did not cross at right angles but at quite an acute angle, so that the wheels of vehicles, in attempting to cross, were likely to slide along the rails. As plaintiff was attempting to go over this second crossing with his wagon and was nearly off the track, the defendants' train, which was behind time and running at a speed of from thirty to forty miles per hour, no signal having been given before it approached the crossing, struck the wagon. The train approached

through a cut, which prevented plaintiff from seeing it earlier, and prevented him from being seen from it until he was on the crossing. When he did see it his team was right on the track and his wagon slipping along the rail, and when he saw it he whipped his team, and as they went over the railroad the train came " like a streak " and struck the hind wheel of the wagon and knocked plaintiff and his son out. If the track had been properly fixed, plaintiff would have got across without injury. He was bruised, cut and mashed in many places; suffered great pain; was confined to the house about a month, and since the injury has continued to suffer pain and been able to do but little work; can scarcely get up a hill at all, but can plow a little on a level; cannot do more than a fourth of a day's work; before the injury he could do as much work as anybody; his physician's bill was $100; and probably his injuries are to some extent permanent. The speed of the train was not checked in approaching the crossing, and there were no blow-posts near the crossing. When plaintiff recovered consciousness the train was standing across the wagon road. When he approached the railroad he did not stop to listen to see if the train was coming, but drove right on. His wagon was making a noise; it was in August and the wagon was dry; he was traveling on a gravelly road, and had two empty whisky barrels, a sack of flour and a quart bottle of whisky in the wagon. He had not taken over two tablespoonfuls of liquor that day, and was sober. He was sixty-five years old.

The defendant introduced no testimony. The jury found for the plaintiff $2,000.

DABNEY & FOUCHÉ, F. W. COPELAND, W. W. BROOKES and W. T. TURNBULL, for plaintiff in error.

PAYNE & WALKER, *contra.*

SIMMONS, Justice.

Jackson brought his action against the Chattanooga, Rome and Carrollton Railroad Company, for damages sustained by him by reason of personal injuries inflicted upon him, by the negligence of the company. This action was brought to the February term, 1889, of Walker superior court. At that term the defendant filed a plea in abatement, alleging, in substance, that the plaintiff should not have and maintain this action, because on the 18th of January, 1889, he began his action against the defendant in a justice's court in the State of Tennessee, for $200, for injuries to a minor son, and that on February 20th, 1889, a judgment was rendered against the defendant in said action, and on the 25th of February, 1889, the defendant paid off and discharged the judgment; and that said suit in Tennessee was for the same cause of action set up in this suit. Defendant afterwards amended this plea by alleging that said suit in Tennessee was still pending. When the case came on for trial at the February term, 1890, in Walker superior court, the plaintiff proposed to amend his declaration by striking out the word "Carrollton" in the name of the company, and inserting in lieu thereof the word "Columbus," so that the defendant's name would read, the "Chattanooga, Rome and Columbus Railroad Company." To this the defendant objected, on the ground that the proposed amendment introduced a new party. The objection was overruled, and the defendant excepted. The defendant objected to going to trial, on the ground that it had just been made a party and that it was then the appearance term. The objection was overruled, and the defendant excepted. The case then went to trial without the intervention of a jury, on the plea in abatement. Upon the trial of the issue made on this plea, the plaintiff offered the interrogatories of Lewis Shepard and John A. Moon,

practicing attorneys in the courts of Tennessee, for
the purpose of showing what the rules of practice were
in Tennessee, and also to show the effect of the orders,
judgments and decrees of the circuit courts of that
State, and the law of that State on the subject of plead-
ing in justices' courts and the dismissal of appeals
therefrom ; to all of which evidence the defendant ob-
jected, on the ground that the statutes of Tennessee and
the decisions of its Supreme Court are the highest and
best evidence of its laws.    This objection was overruled ;
and the court, after hearing the evidence on the plea,
found against the defendant, and the defendant excepted.
The case was then tried upon its merits before a jury,
and a verdict was rendered against the defendant.    The
defendant thereupon made a motion for a new trial, on
the several grounds contained therein, which was over-
ruled by the court, and it excepted.    Error is assigned
in the bill of exceptions on each of the above rulings.

1. There was no error in allowing the plaintiff to
amend his declaration by substituting the word " Co-
lumbus" for the word " Carrollton," so as to give the
defendant its proper corporate name.    It was not add-
ing a new party, but simply correcting a misnomer.
This, under our code, §3483, the plaintiff had the right
to do *instanter.    Johnson* v. *Central Railroad,* 74 *Ga.*
397.

2. There was no error in requiring the defendant to
go to trial after this amendment was allowed.    Counsel
did not state to the court that they were less prepared
for trial on account of this amendment, nor give any
other reason why the trial should not proceed, except
that a new party had been added and that it was the
appearance term as to it.    Besides, it appears from the
record that service was acknowledged on the writ by
counsel, on behalf of the " Chattanooga & Columbus
Railway Co."; and in the plea filed in abatement the

case was stated as " Jackson *v.* Chattanooga, Rome and Columbus Railroad Company," showing that counsel for the defendant recognized that the true defendant had been sued and served.

3. The next exception relates to the admission, over objection, of the testimony of Shepard and Moon. It will be remembered that this testimony was offered not only to prove the law of Tennessee on the subject of appeals and their dismissal, but also to prove the practice in the circuit courts in regard to such matters. Our code, §3824, declares: "The public laws of the United States and of the several States thereof, as published by authority, shall be judicially recognized without proof." While, therefore, the trial judge might have resorted to the statutes and the decisions of the Supreme Court of Tennessee, we cannot say that it was error to receive the testimony of skilled attorneys who practiced in the courts of that State, to aid him in arriving at a proper conclusion as to what was the law of the State, and especially as to the practice of the courts thereof in regard to appeals and their dismissal. The testimony was not for the jury, but for the information of the judge; and he was not bound by the opinions of these attorneys, but it was his duty at last to decide the law himself, aided by these opinions and by such other sources of information as were accessible to him. Knowing as we do the great difficulty under which courts labor in arriving at the true law of a case, and especially the difficulty encountered here as well as by the court below in this case, we cannot condemn a trial judge for resorting to any sources of information which will aid him in coming to a correct conclusion as to the law. The record shows that the judge in this case did not confine himself to the opinions of the attorneys, but that the statutes of Tennessee and the decisions of its Supreme Court were read to him. More-

over, in some States that have no statute like our own above quoted (Code, §3824), evidence of this kind is the proper mode of proving the law of another State; and the Supreme Court of the United States has so held. Hanley *v.* Donoghue, 116 U. S. 1; Chicago & Alton Railroad *v.* Wiggins Ferry Co., 119 U. S. 615.

4. The next exception complains that the court erred in finding for the plaintiff on the plea in abatement. It will be remembered that the plea in abatement was filed at the February term, 1889, and alleged that the plaintiff had already recovered a judgment upon the same cause of action in the State of Tennessee and that the judgment had been paid off and discharged. The evidence on the trial of this plea, a year after the filing of the plea, showed that instead of the judgment having been paid off and discharged, the defendant, on the 20th of February, five days before the plea was filed, had appealed from the justice's court to the circuit court, and on the 9th of March thereafter, in vacation, dismissed the appeal; and on the 6th of May thereafter, moved in the circuit court to enter the dismissal of record, and took an order in open court, as follows : " It appearing to the court that the defendant is entitled to make said dismissal a matter of record in this court, it is therefore considered by the court that said appeal be and the same is dismissed, and the judgment of the justice's court is affirmed." This order appears to have been entered on the records of the circuit court. The evidence further showed that on the same day and after the defendant had dismissed its appeal, the plaintiff dismissed his case against the defendant, by order of the same court; and that on June 30th thereafter, the amount recovered by the plaintiff against the defendant was paid into the clerk's office of the circuit court; but the record fails to disclose that the plaintiff ever received the money, nor was there any evidence going to show

that the clerk was the proper party to receive it. The dismissal of the appeal in vacation was unauthorized by the laws of Tennessee and had no effect. Such we have ascertained is the rule in that State. In Tennessee, an appeal from a justice's court to the circuit court does not merely suspend the judgment as it does in this State, but vacates it. Furber v. Carter, 34 Tenn. 3. When, therefore, the appeal was entered, the judgment of the justice's court was vacated ; and under this law and the above state of facts, the court did not err in finding against the plea.

But it is argued by counsel for the plaintiff in error that when the company dismissed its appeal on the 9th of March, in vacation, and took an order in open court on the 6th of May thereafter, making the dismissal the judgment of the circuit court and affirming the judgment of the justice of the peace, the judgment of the justice's court became final; and that the court below in the present case erred in not so holding. Counsel for the defendant in error replies to this by showing the subsequent order wherein he dismissed in the circuit court the case he had brought in the justice's court and which the railroad company had carried up by appeal. But counsel for the railroad company contend that this order was void and should not have been construed to have any effect, because when the company dismissed its appeal and the judge of the circuit court by his order affirmed the judgment of the justice's court, there was no case in the circuit court to dismiss. It will be seen, therefore, that the present case, upon this point, turned on the question whether the order of the Tennessee circuit court dismissing the case was void, or was simply an irregularity and erroneous. If it was void, Jackson, the plaintiff, when this case came up in the court below, had already a final judgment of the courts of Tennessee against the defendant, upon the same cause of ac-

tion; but if the order dismissing the case was simply irregular, each of the parties was bound by it until revoked or reversed on appeal or writ of error. After much reflection, we have come to the conclusion that the order dismissing the case from the circuit court was not void, but was merely irregular and erroneous. "By the common law a judgment might be altered, revised, revoked or amended at any time during the term at which it was rendered." 12 Am. & Eug. Ency. of L. 120. "A court may vacate its judgment at any time during the term at which it was rendered, even though the steps for taking an appeal have been perfected." *Id.* 126. See also 1 Am. & Eng. Ency. of L. 627, and authorities cited, note 15; 1 Black Judgments, §305; 1 Freem. Judgments, §69. There was no question made but that the court which rendered the judgment had jurisdiction of the subject-matter and the parties. Having this jurisdiction, it had the right at any time during that term to annul, revoke, change or amend any judgment which it had previously rendered. While the latter judgment dismissing the case does not allude to the former judgment dismissing the appeal and affirming the judgment of the justice's court, yet to give it effect it must necessarily be construed to revoke or annul the first judgment and to reinstate the case. The court having acquired full jurisdiction of the case, it retained it until the case was finally disposed of. The exercise of the jurisdiction may have been suspended upon the dismissal of the appeal, but the jurisdiction itself was not suspended. "When therefore a court which still retains jurisdiction but has suspended the exercise of it, assumes again to exercise its jurisdiction, its action is within its power and cannot be collaterally impeached." 2 Black Judgments, §912; Anderson *v.* Excelsior Co., 27 N. Y. 216; Loeb *v.* Willis, 3 N. E. Rep. 177, 100 N. Y. 231; Blun *v.* Wettermark, 58 Tex. 125.

While it would have been the better practice to re-
voke in terms the first order dismissing the appeal, we
think the granting of the second order dismissing the
case was a revocation of the first by indirection.   1
Black Judgments, §304.  For ˙instance, when a trial
is had, a verdict rendered and a judgment entered
thereon, and a motion for a new trial is made and
granted, the granting of the motion sets aside the judg-
ment by indirection.

It was also contended that the order was void be-
cause there was no notice given the railroad company
of the application for or the granting of the second
order.   In reply to this it is said in 2 Black Judgments,
§912, that " where ˙in the case of a foreign judgment it
does not appear by the record that any notice was given
to the party affected by the action of the court in thus
resuming its jurisdiction, it will be presumed that ac-
cording to the practice of the court, no such notice was
necessary, or that if necessary, it was in fact given."

5. The last and remaining ground to be considered,
as made in the bill of exceptions, is that the court erred
in finding against the plea of pendency of the former
suit in the Tennessee court.   There was no error in this
finding by the court.   It is well settled that " The pen-
dency of a prior suit in one State cannot be plead in
abatement of a suit between the same parties for the
same cause in a court of another State."   Bennett on
*Lis Pendens*, §347.  See also Whart. on Conflict of
Laws, §784 *et seq.;* Story on Conflict of Laws, 833,
note; 8 Am. & Eng. Enc. of Law, 554; Smith *v.* La-
throp, 44 Pa. St. 326, s. c. 3 Am. Law Reg. 107; West
*v.* McConnell, 25 Am. Dec. 191, and note.

6. The only ground of the motion for a new trial in-
sisted upon here was the 3d ground thereof, which is
that the verdict is contrary to evidence, etc.   It is
claimed in support of this ground of the motion that

the evidence shows that the plaintiff in the court below was negligent and could have avoided the injury to himself by the exercise of ordinary care. We presume that the court submitted this question fairly to the jury, and the jury having found against the railroad company on that issue, and there being sufficient evidence to authorize their finding, and the trial judge being satisfied therewith, he did not abuse his discretion in refusing a new trial on this ground.    *Judgment affirmed.*