## COMMISSIONERS OF McINTOSH COUNTY *v.* AIKEN CANNING COMPANY.

1. Where in a civil case the party proceeded against is designated and described by a wrong name, the objection of misnomer should be taken by a plea in abatement, and not by a motion to dismiss.
2. Where in such a case the party defendant, whether a corporation or a natural person, appears and pleads to the merits by the true name without raising the objection of misnomer the error as to the name of such party is waived.
3. Where upon the hearing of an application for mandamus it appears, from the answer of the respondent to the mandamus nisi, that issues of fact are involved in the cause, which are material to a proper determination of the same, it is erroneous to grant a mandamus absolute, without submitting such issues to a jury.

Submitted June 29, — Decided August 3, 1905.

Mandamus. Before Judge Seabrook. McIntosh superior court. May 22, 1905.

The Aiken Canning Company brought a petition for mandamus against "the Board of Commissioners for the County of McIntosh and City of Darien," alleging that the defendant was a corporation having charge and control of the county affairs of McIntosh county, Georgia. In the petition it was alleged that the petitioner, desiring to transplant oysters, in accordance with the provisions of the Political Code, § 1694, applied by petition to the defendant, in the terms of this code section, for its consent and approval of petitioner's proposed action; that the defendant, in violation of petitioner's rights, failed and refused, and still fails and refuses, to give its consent and approval as required by law. A copy of the plaintiff's application to the defendant was attached to the petition for mandamus. The prayer was for the writ of mandamus, directed to the defendant, commanding and

requiring it to give its consent and approval to the action desired by the plaintiff. The facts alleged in the petition were verified by the affidavit of the general manager of the canning company. A rule nisi was granted on April 20, 1905, requiring the defendant to show cause, etc., on the 4th Monday in May, 1905, and ordered served upon the defendant; and process was issued, requiring the defendant to answer the plaintiff's petition at the next term of the superior court of McIntosh county. On May 15, 1905, the defendant filed its answer, which, after stating the case, began as follows: "And now comes the Commissioners of McIntosh County, a corporation that has been served as the defendant in the above-entitled cause, and, answering, says:" etc. In this answer the "Commissioners of McIntosh County" admitted that the petition, a copy of which was attached to the plaintiff's petition for mandamus, was presented to "it," and that "it" failed and refused to give its consent as therein prayed for, but denied that such refusal was in violation of the plaintiff's rights. It alleged that there was no such territory within the county of McIntosh as is covered by section 1694 of the Political Code, and to which the defendant could grant the privileges that had been asked for by the plaintiff, and that all the oyster beds within the limits of the county and within one thousand feet of the shore line at mean low tide are either leased, owned by persons, or are such beds as are resorted to by the citizens of the State for procuring oysters for consumption or for sale; and that a mandamus would be nugatory and fruitless, and should, under the Civil Code, § 4870, be refused. The case came on to be tried at the May term of the superior court, when the defendant "moved to dismiss the proceedings in said case as to it, because the petition and rule nisi served upon it was a proceeding against the 'Board of Commissioners for the County of McIntosh and City of Darien,' and not against the 'Commissioners of McIntosh County.'" The court overruled this motion, and the defendant excepted. The plaintiff offered an amendment to its petition, changing the name of the defendant so that it should read "Commissioners of McIntosh County," which amendment was allowed by the court over the objection of the defendant, to which ruling the defendant also excepted. "Plaintiff then orally moved the court to make the mandamus absolute, claiming that the answer

of the defendant did not admit of the introduction of any evidence, and had not raised any question of fact that could be determined at that time; and after argument of counsel, the court sustained the motion of plaintiff and adjudged and decreed' that' the mandamus absolute issue as prayed," to which ruling and judgment the defendant excepted.

*Charles M. Tyson*, for plaintiff in error.
*Kay, Bennet & Conyers*, contra.

FISH, P. J. (After stating the facts.) 1, 2. The proper method by which to have raised the question made by the motion to dismiss was by plea in abatement, which has not been abolished in this State. But, irrespective of the method, the objection came too late. The defendant had appeared and filed its defense to the merits, admitting in its answer that it had been served as the defendant in the case. All the authorities recognize the dilatory nature of the objection upon the ground of misnomer of the defendant, and the necessity of making it as such. 14 Enc. Pl. & Pr. 296. The objection must be taken in limine, and the cases hold that where a party, whether a natural person or a corporation, is sued under a wrong name, and appears and pleads by the true name, without raising the objection of misnomer, the error is waived and the defendant will be concluded. *Rhodes* v. *Louisville*, 121 *Ga.* 553; McCreery v. Everding, 54 Cal. 168; Gilbert v. Nantucket Bank, 5 Mass. 97; City of Kingfisher v. Pratt, 4 Okla. 284; Hammond v. Starr, 79 Cal. 556 (where the defendant was sued as " Ætna Iron Work, a corporation," when the true name, by which it appeared and pleaded, was " Ætna Iron Works Company "); Board of Commissioners v. Huffman, 134 Ind. 4 (where the complaint was against " The County of Huntington," when it should have been against " The Board of Commissioners of Huntington County "); Chicago & Alton R. Co. v. Heinrich, 57 Ill. App. 399, affirmed, 157 Ill. 388 (where the defendant, the " Chicago and Alton Railroad Company," was misnamed in the declaration as the " Chicago, Alton and St. Louis Railroad Company"). This rule is especially applicable in this State, where all misnomers in civil proceedings, " whether in the Christian names or surnames," may, on motion, " be amended and corrected instanter, without working unnecessary delay to the party making the

same." Civil Code, § 5102. This section applies to corporations as well as to natural persons. *Central Railroad* v. *Rogers,* 66 *Ga.* 252; *Johnson* v. *Central Railroad,* 74 *Ga.* 397; *Chattanooga R. Co.* v. *Jackson,* 86 *Ga.* 676. It follows that the court did not err in allowing the amendment which corrected the misnomer as to the defendant. As the plaintiff had the right to make this amendment at any stage of the cause, it also follows that even if the court had erred in overruling the defendant's motion to dismiss, such error would have been cured by this amendment.

3. In our opinion, the court erred in holding that the answer did not raise any question of fact to be determined by a jury, and in making the mandamus absolute upon the admissions of the defendant in its answer. The section of the Political Code under which the application to the board of commissioners was made by the canning company is as follows: "It shall not be lawful to take or catch any oysters in any of the waters of this State with or by a scoop, rake, drag, or dredge, or by the use of any other instrument than the oyster-tongs heretofore in general use for taking oysters, except within the waters more than one thousand feet distant from the shore-line at ordinary mean low tide. Oysters may be taken by any means or device from any private bed by the owner or lessee thereof, and for the purpose of transplanting to other beds in this State, from territory unleased within said limits of one thousand feet; but, in the last case, only upon the consent and approval of the county commissioners for the county within which said territory may be located, or upon the consent and approval of the ordinary of those counties which may have no board of county commissioners, which consent shall be given in all cases in which application is made for the purpose of transplanting oysters to other beds within the waters of this State, from such beds as are not resorted to by the citizens of this State for the purpose of procuring oysters for consumption or for sale." Pol. Code, § 1694. The position of the defendant in error is, that as its application was for permission to take oysters, for the purpose of transplanting to other beds within this State, from such public oyster beds as are not resorted to by the citizens of this State for the purpose of procuring oysters for consumption or for sale, the board of commissioners had no discretion whatever in the matter, but was bound to grant the application, upon its mere presenta-

tion, whether there were any such beds within the county of Mc-. Intosh or not; and the judge below evidently took the same view of the matter. We think this is too literal a construction of the statute. If the law means this, it is strange that the legislature should have required that any application should be made to the board of county commissioners, or ordinary, as the case may be, for permission to take oysters, within the limits defined, by any means or device, for the purpose of transplanting to other beds within this State, from such beds as are not resorted to by the citizens of this State for the purpose of procuring oysters for con- sumption or sale. Why require the application to be made to the board of commissioners, if under no circumstances the board can refuse to grant it? It seems to us that the purpose in requiring the application to be made in such a case as this must be to pro- tect the oyster beds of a county from depredation by any and everybody who might undertake to gather oysters therefrom, by the use of any sort of means or device that they might see fit to employ, under the pretense of taking them, for the purpose of transplanting within the waters of this State, from unleased lands not resorted to by the citizens of the State for the purpose of pro- curing oysters for consumption or sale. We are of opinion that, under this section of the code, the proper county authority has, at least, the power of passing upon the bona fides of the application, and of refusing to grant it, if the circumstances are such as to warrant the conclusion that the application is not in fact made for the purpose therein expressed, or if there are no oyster beds within the waters of the county to which the consent asked for could apply. In the application of the canning company to the board of commissioners it was alleged that the applicant was "the owner and lessee of large territory of oyster beds and lands situate, lying, and being in the waters of McIntosh county." This allegation must have been made for the purpose of showing the good faith of the applicant and indicating in what waters within this State the oysters were to be transplanted. And we will say here that we think that in every application of this character the county authority applied to should be informed of the locality where it is proposed to transplant the oysters; otherwise there might be no way of ascertaining whether the oysters are to be transplanted to other beds within the waters of this State or not.

In its answer to the petition for mandamus the board of commissioners emphatically denied the allegation that the canning company is the owner and lessee of large territory of oyster beds and lands in the waters of. McIntosh county, and alleged that from the fact that this "misstatement" was made in the application to the board, and from the further fact that there are no oyster beds in McIntosh county to which the consent asked for could apply, it believed that the application was "but a subterfuge on the part of the plaintiff so as to prey upon the oyster beds of McIntosh county, . . which are not subject to the provisions of code section 1694." Under these circumstances, taking the allegation that there are no such oyster beds in McIntosh county to be true, we think the board had the power and was justified in refusing the application. The answer presented two questions of fact, to be determined by a jury, viz.: (1) Whether there were any oyster beds in McIntosh county to which the permission asked for could apply; and (2) whether the applicant was really the owner or lessee of any oyster beds or lands in that county upon which it proposed to transplant the oysters.

It is true that the section of the code in question declares that whenever the application is made for the purpose specified in the statute, and is limited to such unleased oyster beds as are not resorted to by the citizens of this State for the purpose of procuring oysters for consumption or sale, it shall be granted; but this does not necessarily mean that the applicant shall be the exclusive judge of the purpose for which the application is made. Suppose that the application is not in fact made for the purpose specified in the statute, but recites on its face that it is, is the board or the ordinary compelled to grant it? Suppose the real purpose, behind the application, is to take the oysters for the purpose of transplanting them within the waters of another State, or for the use of a canning factory owned or operated by the applicant, or for the purpose of selling them in their natural state, and the board of commissioners or the ordinary know or have good reason to believe this, must the permission be granted upon the mere presentation of the application? We can not believe that the legislature intended that whenever an application of this character is presented to the ordinary, or board of commissioners, it must be granted, even though it is not made in good faith, but is a mere

subterfuge or pretense under which to cover an illegal purpose. For these reasons, we think the court should have submitted the two question above indicated to the jury, and should not have granted a mandamus absolute unless both were answered by the jury in the affirmative. If the canning company was not the owner or lessee of any oyster beds or lands in McIntosh county, upon which it could transplant the oysters which it wished to take, then its application should not have been granted; for it did not indicate, in the application, a purpose to transplant the oysters upon any other oyster lands within this State. If there is no territory within the county of McIntosh to which the application could apply, the refusal to grant it was proper, as granting it would be a mere perfunctory and senseless act. At any rate, if this be true, the court ought not to grant a mandamus absolute; for this extraordinary writ is never issued for the mere purpose of settling, in favor of the applicant for it, a question in which he can have no real, substantial interest. "Mandamus will not be granted when it is manifest that the writ would, for any cause, be nugatory or fruitless." Civil Code, § 4870.

*Judgment reversed. All the Justices concur, except Simmons, C. J., absent.*