### 15864. WESTERN & ATLANTIC RAILROAD *v.* REED.

1. Where under an act of the General Assembly a corporation's correct name was Western and Atlantic Railroad, and where a suit was brought against it under the name of Western and Atlantic Railroad Company, the action was amendable by striking the word "Company." Such amendment having been allowed, neither the petition nor the amendment was subject to any of the grounds of special demurrer complaining of the misnomer.

2. In this action for a homicide alleged to have been caused by the negligent operation of one of the defendant's railway trains the petition set forth a cause of action. The allegations severally attacked by special demurrers, some upon the ground that certain information to which the defendant claimed to be entitled was not disclosed, some upon the ground that they were mere conclusions of the pleader, and others upon the ground that the facts pleaded did not constitute negligence, were not subject to any of the objections interposed. All the demurrers, both general and special, were properly overruled.

DECIDED JANUARY 17, 1925.

Action for damages; from Cobb superior court—Judge Blair. July 25, 1924.

*Tye, Peeples & Tye, Morris, Hawkins & Wallace,* for plaintiff in error.

*Reuben R. & Lowry Arnold, Mozley & Gann,* contra.

BELL, J. 1. General and special demurrers to the complaint of Mrs. Nora Reed were overruled, and the defendant excepted. The suit as originally filed was against "Western & Atlantic Railroad Company," and process was issued accordingly. One ground of the original demurrer was that defendant's corporate name is "Western & Atlantic Railroad," and that by such name only should it be sued. The plaintiff offered, and the court allowed, an amendment to the suit, striking the word "Company," so that the name of

the defendant should read "Western & Atlantic Railroad." The defendant then demurred as follows:

"1. Defendant demurs to the original petition and moves to strike the same upon the ground and for the reason that it is not brought against the defendant in its proper corporate name; and it is therefore against neither a natural, artificial, or quasi-artificial person, and, a real party defendant being essential to a valid suit, the plaintiff's petition should be dismissed.

"2. Defendant demurs to the amendment offered by the plaintiff and moves to strike the same upon the ground and for the reason that there was nothing to amend by, the original petition having been instituted against the 'Western and Atlantic Railroad Company,' whereas, under the laws of the State of Georgia, the defendant's corporate name is 'Western & Atlantic Railroad,' and by such name only can it be sued. The plaintiff's original petition being against neither a natural, artificial, or quasi-artificial person, and a real party defendant being an essential to a valid suit, the plaintiff's original petition is a nullity, and there is nothing by which the plaintiff can amend.

"3. Defendant demurs to paragraph one of the amendment offered by the plaintiff [in which the word 'Company' was stricken from the defendant's name as alleged in the original petition], upon the grounds and for the reasons: (a) It seeks to make a new, different, separate and distinct party defendant to the suit, (b) It seeks to add thereto a party defendant where none previously existed."

It is true that the defendant's corporate name is as shown in the demurrer (see Ga. L. Ex. Sess. 1915, p. 128), but we nevertheless think that the demurrer was properly overruled. "All misnomers, whether in the Christian name or surname, made in writs, petitions, bills, or other judicial proceedings on the civil side of the court, shall, on motion, be amended and corrected instanter, without working unnecessary delay to the party making the same." Civil Code (1910), § 5686. This section, which is a codification of the act of 1850, has been held applicable to railroad companies. *Rome Rail Road Co.* v. *Sullivan,* 14 *Ga.* 277 (3); *Johnson* v. *Central Railroad,* 74 *Ga.* 397; *Chattanooga R. Co.* v. *Jackson,* 86 *Ga.* 676 (1) (13 S. E. 109); *Maddox* v. *Central of Ga. Ry. Co.,* 110 *Ga.* 301 (1). (34 S. E. 1036); *Atlantic Coast Line R. Co.* v. *Cook,* 6

*Ga. App.* 128 (1) (64 S. E. 665). Under these decisions the court properly allowed the amendment, and was right in subsequently refusing to dismiss the petition merely because the defendant's name was not correctly set forth in the original instance.

To sustain its position the plaintiff in error cites a number of decisions by the Supreme Court, and one by this court, in which it is held that a suit against a county or a municipality, brought in any other than its correct legal name, is a nullity and not subject to amendment. See *Storey* v. *Town of Summerville,* 158 *Ga.* 182 (1) (123 S. E. 139), and other cases therein cited. It is insisted that the decisions of the latter class are controlling upon the question presented, and that those cases to which we have first above referred are distinguishable from the one at bar, in that in none of those cases were the precise questions made by the demurrers in the instant case raised or passed upon. It is also suggested that the two lines of cases referred to are possibly in conflict, and it is requested that unless we can agree with the contention of the plaintiff in error that the suit ought to have been dismissed, we certify the question to the Supreme Court, in order that the several decisions which we have first cited might "be reviewed and overruled . . . because of the conflict between these authorities and those" relied on by the plaintiff in error.

Whether the exact points made by the demurrers in the present case have been raised or passed upon in any of the other cases, we are content to rule that they are untenable in view of the code section quoted above. While this section of the code has been held applicable also in the case of a county or a municipality, its application as against parties of this character seems to have been limited to instances where the defendant had appeared and pleaded to the merits in its true name, without raising the objection of misnomer. *Commissioners of McIntosh County* v. *Aiken Canning Co.,* 123 *Ga.* 647 (2) (51 S. E. 585) ; *Saunders* v. *Mayor &c. of Arlington,* 147 *Ga.* 581 (1) (94 S. E. 1022). It may be that the difference in the application of the rule arises from the fact that the State can not be sued without its consent (*Printup* v. *Cherokee R. Co.,* 45 *Ga.* 365 (1) ; *Mayo* v. *Renfroe,* 66 *Ga.* 408, 427), and that since counties and municipalities possess in a sense a part of the State's sovereignty, provisions for their suit should be strictly complied with. See Civil Code (1910), § 384; *County of Monroe*

v. *Flynt,* 80 *Ga.* 489 (1) (6 S. E. 173) ; *Smith* v. *Floyd County,* 85 *Ga.* 420 (2), 427 (11 S. E. 850) ; *City Council of Augusta* v. *Hudson,* 88 *Ga.* 599 (1), 605 (15 S. E. 678) ; *Fleming* v. *Floyd County,* 131 *Ga.* 545. A county is not liable to suit for any cause of action unless made so by statute. Civil Code (1910), § 384. While it seems to be otherwise in the case of a municipality, the suability of which is possibly an incident of its corporate existence (20 Am. & Eng. Ency. Law 1145), it still enjoys in one phase of its character a part of the State sovereignty, and for this reason it perhaps might be entitled to be sued only in its correct name from the very inception of the litigation, where, as to corporations not possessing any quality of sovereignty and as to individuals, the suit, though originally alleging the defendant's name defectively, would be subject to amendment.

The doctrine reannounced and applied in *Storey* v. *Town of Summerville,* supra, appears to have originated in a case pertaining to a county and involving an application of the constitutional provision that suits by or against a county shall be in the name thereof (Civil Code of 1910, § 6594), and to have been later extended to cases of municipalities. *Bennett* v. *Walker,* 64 *Ga.* 327; *Boon* v. *Mayor and Council of Jackson,* 98 *Ga.* 490 (25 S. E. 518).

But whether we have remarked upon a distinction that does not exist, or whether the different cases are distinguishable upon any theory, the oldest decision in any way applicable to the question under consideration is that of *Rome R. Co.* v. *Sullivan,* supra, and this should be followed if there be a conflict between it and later cases. We are of the opinion that the act of 1850 referred to and applied in that case is sufficiently comprehensive to dispose of all grounds of the demurrer relating to the misnomer. See *Haynes* v. *Armour Fertilizer Works,* 146 *Ga.* 832 (92 S. E. 648). We do not deem it necessary to certify any question to the Supreme Court upon this subject, especially since the plaintiff in error has open to it the remedy of certiorari.

2. The suit was for the death of the plaintiff's son in a collision between an automobile in which he was riding and one of the defendant's railroad trains. The ninth paragraph of each of the two counts of the petition alleged, that, as the automobile proceeded to cross over the defendant's tracks, "a street-car on a track parallel to the defendant's track was approaching the crossing and

was very close thereto, and making considerable noise and attracting the attention of the occupants of the car." The first count as amended showed the direction in which the street-car was moving, but this was not true of the second count. The defendant demurred to the allegations, in both counts, that the street-car was making considerable noise and was attracting the attention of the occupants of the car, upon the ground that the same were mere conclusions of the pleader, not based upon any facts anywhere alleged in the petition. There was no merit in these demurrers. Irrespective of whether the allegations were mere conclusions, they appear to have been made for the general purpose of illustrating that the decedent was not himself negligent in failing to discover the approach of the defendant's train. It was not necessary for the plaintiff to negative the decedent's want of care (*Atlantic Coast Line R. Co.* v. *Wildman,* 29 *Ga. App.* 745 (3), 116 S. E. 858), and the petition, having given information not required, is not bad for a failure to supply it more in detail. *Breman* v. *Rodbell,* 31 *Ga. App.* 358 (5) (120 S. E. 697); *Central of Georgia Ry. Co.* v. *Brandenburg,* 129 *Ga.* 115, 119 (58 S. E. 658). Even if the allegations were designed to include facts as a part of the cause of action, it was unnecessary to allege the direction in which the street-car was moving. *Seaboard Air-Line Ry.* v. *Peeples,* 9 *Ga. App.* 477 (2) (71 S. E. 758).

The fourteenth paragraph of each count was as follows: "The defendant's engineer and fireman negligently failed to keep any proper lookout ahead as said crossing was approached. The defendant's said engineer and fireman failed to give any signal by bell, whistle, or otherwise, as ordinary care requires, as said crossing was approached. The defendant's engineer was negligently running said engine at a speed of approximately forty miles per hour, which was negligence. The said grade was down towards said crossing, and not only did the said engine-crew fail to give any signal, but the engine was not making any noise by exhaust or otherwise, and slipped down silently towards said crossing." In the demurrer it was contended that the allegation, "But the engine was not making any noise by exhaust or otherwise, and slipped down silently towards said crossing," should be stricken, because insufficient as a charge of negligence. This averment appears to have been made also for the purpose of showing that there was

no want of care on the part of the decedent. The petition did not allege negligence in respect of the matter just referred to.

Paragraphs 13 and 15 of each count of the petition were as follows: "The said crossing was well traveled, and had been established over the defendant's right of way with the defendant's consent, and defendant had recognized the same by adapting its tracks to the crossing and by filling up the approaches thereto and making them passable for vehicles, and by filling in the spaces between its track, and said crossing was much traveled." "(15) The said engineer was further negligent in that he negligently failed to have his engine under control as said crossing was reached and negligently failed to slow up or check the speed of his train as ordinary care required." The allegations of each paragraph 15 were demurred to on the ground that the facts shown could not constitute negligence. It would be within the province of the jury to decide what was due care on the part of the railroad company and its employees with reference to the control it should have over its engine and train in approaching the well traveled crossing which, assuming the averments of the thirteenth paragraph to be true, had been established over the defendant's right of way with its consent, and which it had recognized, as by certain acts alleged. It can not be held as a matter of law that the allegations of the fifteenth paragraph did not charge negligence, under the circumstances. The question is one which should be determined by the jury. See *Davis* v. *Whitcomb*, 30 *Ga. App.* 497 (13) (118 S. E. 488); *Crawford* v. *Southern Railway Co.*, 106 *Ga.* 870 (1) (33 S. E. 826); *Louisville & Nashville R. Co.* v. *Cline*, 136 *Ga.* 863 (1), 865 (72 S. E. 405); *Harris* v. *Central Railroad*, 78 *Ga.* 525 (6) (3 S. E. 255).

Paragraph 16 of the first count, as amended, was as follows: "The said engineer and fireman were both further negligent in that both said engineer and fireman discovered the automobile with its back toward the train proceeding down said parallel McGinis road toward said crossing, and it was apparent that said automobile would approach and go upon said crossing and it was apparent that the back of the driver and the other occupants of the automobile were towards the train, and ordinary care under such circumstances required that said train crew should have given signal before said automobile entered upon said crossing, in order to prevent it from getting upon the same, and yet both the engineer and

fireman negligently failed to give any signal as the said crossing was approached and negligently failed to give any signal after discovering said automobile upon said road and before it reached said grade crossing." It was not an objectionable conclusion, as was insisted in one ground of the special demurrer, to allege, with the other facts, that "it was apparent that the back of the driver and the other occupants of the automobile were toward the train;" nor is this allegation defective in that it fails to disclose to whom such fact became apparent, nor when, nor how it became apparent. The petition sufficiently implies that the fact became apparent to the engineer and fireman, and it was unnecessary to state the other facts with more particularity; nor was it essential that the plaintiff should allege who were the other occupants of the automobile.

Paragraph 16 of the second count of the petition alleged: "The said engineer and fireman were both further negligent in that when the said decedent and the automobile in which he was riding were almost upon said crossing, to wit, within twenty or forty feet thereof, and with his back and side to the engine, that said engineer and fireman, in the exercise of ordinary care, in looking ahead towards said grade-crossing over the railroad, should and could have discovered said automobile and its peril before it actually got upon said crossing, and in the exercise of such ordinary care could and should have given a signal of said engine, by whistle or otherwise, to warn the decedent and the driver of the automobile of the approach of the train, and said warning signal would have notified the driver and the decedent of the approach of the train, and they would not have gone upon said crossing had the same been given; but so negligently did the said engineer and fireman conduct themselves that notwithstanding that, in the exercise of ordinary care in looking out ahead towards said crossing, they would have discovered said close proximity of said automobile and its occupants, they failed so to do, and negligently failed to discover the peril of the occupants of said automobile, including the decedent, and negligently failed to give any signal by whistle or otherwise, and such negligence was the proximate cause of the collision with said automobile and the death of the deceased."

This paragraph was demurred to generally, upon the ground that the facts therein set forth could not amount to negligence, and specially upon the ground that the statement that the decedent's

back and side were to the engine was contradictory, for the reason that the decedent could not possibly have both his back and his side to the engine, and it is not alleged which side of the decedent was to the train. The decedent could not, of course, have had his back and side both wholly toward the engine at the same instant, but he could have had both partly toward it. The petition is understood as alleging that the decedent was in a diagonal position relative to the engine. To sustain the demurrer complaining that it is not shown which side of the decedent was toward the engine, we think, would be doing that the like of which has not been done hitherto, or if so, will never be done again. As a matter of fact, it would be implied from the other allegations of the petition that the decedent's right side was the one mentioned.

With respect to the contention that no facts were set forth in the sixteenth paragraph of the second count which could amount to negligence, this question is disposed of adversely to the plaintiff in error by the authorities last cited above. See also *Lowe* v. *Payne,* 156 *Ga.* 312 (118 S. E. 924). This paragraph it is true does not charge the defendant with actual notice of the decedent's presence or peril, but the claim of its negligence must depend upon the question of whether under the circumstances it was its duty to exercise care to discover the automobile in which the decedent was riding before it actually got upon the crossing, and of the consequent duty to give some signal of warning.

Considering in connection with the allegations now under examination the averments of paragraph 13 with reference to the character of the crossing and the defendant's knowledge of its existence, and its consent to the establishment of the same, it can not be said that the petition fails to show a duty of the defendant's part to have anticipated the decedent's presence in the perilous situation within twenty to forty feet of the tracks. *Lowe* v. *Payne,* supra. Where preliminary facts necessary to raise the duty of knowledge have been set forth, an allegation in the nature of a legal conclusion that the party sought to be charged, ought, in the exercise of ordinary care, to have known, is not objectionable, and in such a case it can not be said that the failure to know was not negligence. *Fulton Ice & Coal Co.* v. *Pece,* 29 *Ga. App.* 507 (2) (116 S. E. 57).

A further contention made by a special demurrer was that the allegations in paragraph 16 that "said warning signal would have

notified the driver and the decedent of the approach of the train, and they would not have gone upon said crossing. had the same been given," are a mere conclusion, with no facts alleged upon which to base the same. We can not concur in the position taken. These averments are evidently intended to illustrate that if the warning had been given it would have been effective. If it would not have been effective, the failure to give it would not have constituted negligence actionable for the decedent's homicide. *Central of Ga. Railway Co.* v. *McKey,* 13 *Ga. App.* 477 (3) (79 S. E. 378). It is fair to assume, in the absence of anything to the contrary, that if the signal had been given it would have been heard and heeded. By this language the plaintiff was only declaring that but for the alleged negligence the injury and death of her son would not have occurred. If it would have occurred in spite of the negligence the plaintiff could not recover. The averments objected to possibly could not help the complaint, but we are unable to see how they hurt it. It will be necessary for the jury to infer that the decedent would not have gone upon the track if signals of warning had been given before they would be authorized to find in favor of the plaintiff because of the failure to give signals. As suggested in the brief of counsel for the defendant in error, it can hardly be assumed that the decedent and the driver of the car would deliberately and voluntarily have hurled themselves into certain death, by proceeding immediately in front of a rapidly moving train. The plaintiff was merely alleging that the defendant's negligence was the proximate cause of the death, which could be done by the statement of a conclusion based upon the special facts pleaded.

"The petition should plainly and distinctly set forth the elements necessary to a recovery. Legal results arising from the facts alleged may be pleaded in general terms or in the form of a legal conclusion. A petition so drawn is good against demurrer. *Southern States Portland Cement Co.* v. *Helms,* 2 *Ga. App.* 308 (1) (58 S. E. 524). A conclusion in a pleading will not be subject to special demurrer if the inference stated therein may be legitimately drawn from the special facts pleaded." *Tufts* v. *Threlkeld,* 31 *Ga. App.* 452 (5) (121 S. E. 120).

If we are correct in what we have said above, it follows that the court did not err in overruling the general demurrer to the petition

as a whole. In our opinion, the demurrers, general and special, were properly overruled.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*