# Susquehanna Canal Co. *versus* The Commonwealth.

1. A loan due by an improvement corporation, secured by mortgage on its property in this state, is taxable under the tax laws of the Commonwealth. *Per* PEARSON, P. J.

2. Such loans are taxable although held by a non-resident. *Id.*

3. The legislature can tax the property of another state situate in Pennsylvania, or bonds, &c., being a lien on property in this state and protected by its laws. *Id.*

4. The state may make the debtor, when in its bounds, the collector of the tax due on the debt. *Id.*

5. If another state becomes a lender here, it so far divests itself of its sovereignty. *Id.*

6. Maryland in 1839 made a loan to an improvement corporation of Pennsylvania and secured it by mortgage on the property of the corporation in Pennsylvania. *Held*, that the loan was liable to taxation under subsequent tax laws, and that the taxation did not violate the obligation of the contract. *Id.*

May 21st 1872. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Dauphin county*: Of May Term 1872, No. 14.

[Susquehanna Canal Company v. Commonwealth.]

This was an appeal by the Susquehanna Canal Company from the settlement, April 26th 1870, by the Auditor-General and State Treasurer for taxes on the loans to the Canal Company, for the years 1864, 1865, 1866, 1867, 1868, 1869, the tax amounting to $20,515.33.

The canal company appealed and made the following specifications of objection:—

That one of the loans on which the settlement was based was a bond of the company for $700,000 to the state of Maryland, dated May 27th 1839, "the principal and interest of which are by its terms payable into the treasury of that state, and the interest on the bond has actually been paid there."

That another of the loans was five bonds of the company for $1000 each, dated January 1st 1853, held and owned by Thomas Wilson, a citizen of the state of Maryland, residing in Baltimore, and that the interest on these bonds was payable in Baltimore.

The appellants averred:—

1. That the third section of the act approved April 30th 1864, entitled "An act imposing additional taxes for state purposes," &c., under which the tax, upon interest paid in the years 1864, 1865, 1866, 1867, and until the thirtieth day of April 1868, is claimed to be due, and the eleventh section of the act approved May 1st 1868, entitled "An act to revise, amend and consolidate the laws taxing corporations, brokers and bankers," under which the tax upon interest paid after the first day of May 1868, and in the year 1869, is claimed to be due, were not intended to apply either to bonds or the interest thereon, held and payable as aforesaid.

2. That the object of the said sections was merely to provide a mode of collecting a tax then due by taxable citizens or residents of this Commonwealth, and not to impose a tax where none was payable under the then existing laws; and that under the then existing laws of this Commonwealth no tax was chargeable upon either principal or interest of money payable to another state within such state, nor to a person residing in another state, who was not a citizen of the Commonwealth.

3. That the third section of the said Act of April 30th 1864, requiring every president, treasurer, cashier or other officer of any company, incorporated, or that might thereafter be incorporated, which pays interest to its depositors, bondholders, or other creditors, upon which, by the laws of this Commonwealth, a state tax was imposed, to retain from the said depositors, bondholders, or creditors the amount of state tax imposed by the then existing laws, and to pay over the same to the state treasurer; and the third section of the said Act of May 1st 1868, requiring the president, treasurer or cashier of every company, except banks or savings institutions, incorporated under the laws of this Commonwealth, doing business in this state, to retain and pay over to the

state treasurer, for the use of the Commonwealth, five per centum upon every dollar of interest paid to its bondholders or other creditors, if intended to apply to interest payable in another state on bonds held by such state, or by persons who are neither residents nor citizens of this Commonwealth, are in conflict with the tenth section of the first article of the Constitution of the United States, which provides that no state shall pass any law impairing the obligations of contracts, &c.

The other facts in the case appear in Judge Pearson's charge.

The appeal was tried January 24th 1671, before Pearson, P. J.

The defendants submitted a number of points involving the questions raised by their specifications of objection to the settlement against them.

Judge Pearson's charge, adopted by the Supreme Court, was the following:—

" This case comes into court by appeal from the decision of the accounting department, which has charged the defendant with a tax on moneys paid as interest due to his creditors, and which the state avers that the corporation was bound to retain under the Acts of 1864 and 1868, and pay into the public treasury. The Susquehanna Canal Company is a corporation of Pennsylvania, created under an Act of Assembly, passed on the 15th of April 1835, and empowered to make a canal from Columbia to the Maryland line. By a supplement to that act this company was authorized to borrow money and pledge or mortgage its works. This was done, and eventually very considerable loans made, and the company gave its bonds therefor, bearing interest. Among its creditors was the state of Maryland, which, pursuant to a statute of that state, lent this corporation some seven hundred thousand dollars, which were secured by a bond and mortgage on its works, executed on the 27th day of May 1839, and duly recorded. Prior to that time the state of Maryland had incorporated the ' Tide Water Canal Company,' which was authorized to connect with the Pennsylvania work by the laws of both states, and Maryland lent the two corporations $1,000,000, which were divided at the rate of $700,000 to the one and $300,000 to the other. The Tide Water Canal was wholly in the state of Maryland. The specification of exceptions taken on the appeal and filed in the cause, embrace substantially the following: First. There is no law imposing a tax on money at interest due by a corporation. Second. That the money due to Thomas Wilson by this company could not be taxed, he being a citizen of the state of Maryland, and the interest payable therein. Third. The money due to the state of Maryland is not subject to taxation; and Fourth. The laws authorizing and requiring a deduction of the amount of tax from the interest due to the several creditors impairs the obligation of the contract.

[Susquehanna Canal Company *v.* Commonwealth.]

" It is unnecessary and scarcely proper for this court to enter upon a course of reasoning to prove that debts due by a corporation, of the character proved here, and secured by mortgage, as shown, are taxable under the thirty-second section of the Act of April 29th 1844, and other laws of this Commonwealth, as the point has been repeatedly decided by the Supreme Court. The statute cited imposes a tax on *all mortgages* and money owing by solvent debtors, &c., and ".on all public *loans* or stocks, except those issued by this Commonwealth." Loans to corporations must have been here intended, as those to the state are excepted. This is strengthened by the Act of May 1st 1854, though it is true that it speaks of ' bonds or certificates of loans of any *railroad company* incorporated by this Commonwealth,' but it is merely excepting those from taxation for county purposes, and shows that the legislature considered such obligations taxable by the former law. The question is settled not only in Maltby *v.* The Reading Railroad Company, 2 P. F. Smith 140, but in several unreported cases since. See especially Commonwealth *v.* The Phœnix Iron Company, where the tax is sustained purely on the word ' *mortgages*,' and in some other of the various railroad cases. It is no longer an open question in this state, nor is the non-residence of the creditor in Pennsylvania any ground for relieving his debt from taxation, as already decided in Maltby *v.* The Reading Railroad Company, and many others of kindred character. The tax was always due, but there was no means to effect its collection before the enactment of the Act of April 30th 1864, which required its retention by the corporation officers, and authorized its deduction from the interest due to the creditor. The only new and undecided point in the case arises on the money due to the state of Maryland. Is that subject to taxation by our laws ? We cannot doubt the power of our legislature to tax the property of another state situated within Pennsylvania, or choses in action, bonds or other claims—a lien on property protected by our laws or where they must be invoked to coerce payment of the debt. The only question is, do the laws embrace the bonds due to a sovereign state ? It may be conceded that here, as in England, laws which speak in general of inferior persons, cannot properly be applied to superiors. Those which speak of the subject do not embrace the sovereign ; or of the people do not include the state. It is well settled, however, that the statute may by express words extend to the state, and where it does so it is binding. The Statute of Limitations in general will not bar the sovereign, yet it may be and often is made so to do, both here and in England ; and this either by express words or necessary implication. It has also been held that where an Act of Parliament is made for the public good, the advancement of religion or justice, or to prevent injury and wrong, the king shall be bound by such act, though not par-

ticularly named therein: Plowd. 136–7, 11 Co. 586, 5 Id. 14, 7 Id. 32; Bouvier's Bac. Abr. vol. 8, tit. *Prerogative*, p. 92. Laws imposing taxes would rarely be applied to property solely owned by the state, for the same hand would both pay and receive. This could not apply to the property of another state found in this, for the recipient would be different from the person paying. It is questionable whether any other sovereign can claim exemption from the laws of the state which enacts them. If another state or foreign sovereign sues to collect its debts in our courts, it cannot claim immunity from the operation of the Statute of Limitations. The doctrine of *nullum tempus,* &c., only runs in favor of the local, not the foreign sovereign. It may be assumed as a settled principle that when a sovereign becomes a member of a trading company he divests himself, with reference to the transactions of the company, of the prerogatives of sovereignty, and assumes the character of a private citizen. See Angell on Limitations 33–40 ; 2 Brock C. C. R. 393 ; 3 Pet. U. S. R. 30.

"Instead of communicating to the company its privileges and prerogatives the sovereign descends to a level with those with whom it associates, and takes the character which belongs to them in the business which is to be transacted : United States Bank *v.* Planter's Bank of Georgia, 9 Wheat. 907. The same principle is substantially stated in 11 Pet. 324; 13 How. 12; 15 Id. 304.

"And although a state cannot be sued, yet if it become interested as a stockholder in a corporation, such interest will not protect the corporation from a suit, and all of its incidents and consequences : 10 Ohio R. 476. The United States being a stockholder in the bank, is so far a party to all suits to which the bank is a party, and deeply interested in all of its dealings, yet the doctrine of *nullum tempus,* &c., will not apply to exempt it from the operation of the Statute of Limitations : United States Bank *v.* McKenzie, 2 Brock. C. C. R. 393.

"Although the state is the sole owner in the stock of a banking corporation, it does not affect the right of creditors to be paid cut of property belonging to the bank, and to follow the fund in equity, to secure payment : United States Bank *v.* Planters' Bank of Georgia, 9 Wheat. 904; Briscoe *v.* Bank of Kentucky, 11 Pet. 324; see also 13 How. 12; 15 Id. 304, already cited.

"If the state of Maryland owned land in Pennsylvania, the power of the latter state to tax it could not be questioned ; in fact it would be taxable by our general laws. Why will not the same doctrine apply as to its goods, or chooses in action ? The ability to collect the latter depends on our laws—resort must be had to our courts to obtain redress for non-payment. We protect the property to which that state must look for security of its debt. The loan is to the corporation created by this state, receiving its powers and franchises from Pennsylvania, and why shall not the

[Susquehanna Canal Company *v.* Commonwealth.]

debt of that state be taxed as well as that due to a foreign subject, which has often been decided to come within our tax laws ? The state of Maryland becomes a lender of money, trades and deals with a Pennsylvania corporation, brings itself thereby down to the level of a private individual, and its debt must bear the same burdens.

"It may be conceded that all of our tax laws contemplate that the creditor shall pay the tax on money at interest, yet this state may make the debtor its collector, especially when that debtor is a corporation created by its power and protected by its laws. The Act of 1844 speaks of *all public loans or stocks whatever*, except those due by this Commonwealth. The Act of 1864 requires retention by the corporation officers from all bondholders or creditors to whom interest is payable, and if a neighboring state chooses to become a lender here, it thus far divests itself of its sovereignty. True, the loan may have been made for the most beneficial purpose, and with the most patriotic views. Doubtless it was here done to secure the completion of a work through which the people of Maryland would be more cheaply supplied with fuel and other products of this state, and the citizens of Pennsylvania furnished with ready access to a good market, but although this motive might well be considered by our legislature in relieving a sister state from the burden of taxation, it cannot influence the judgment of the court in construing the statutes. The eleventh section of the Act of May 1st 1868, is, if possible, even more explicit in requiring the retention of the present tax by the corporation officers, a portion of which is claimed under that law. Some stress is laid on the words of the Act of April 22d 1846, section 3, to show that *persons* alone are required to make returns of property, &c., for taxation, but after the most careful reading of that act we are of opinion that it has no bearing on the present case. This assessment, so far as regards the taxes of 1864–5–6–7, must be sustained, if at all, under the Act of 1844. The state of Maryland is the immediate beneficiary of the interest on the loan here, and its property alone can be looked to. We are referred to the decision of the Secretary of the Treasury, that the Acts of Congress did not contemplate a deduction from the interest due to a state by the corporations to which it had made loans, but only from that of the *people of a state*. It may be observed that the wording of the Acts of Congress is different from the statutes of Pennsylvania, and therefore must receive a different construction, but as the United States does not suffer its obligations, business, institutions or sources of revenue to be taxed by the state, so it extends a like comity to the revenues of the various states— will not impose any obligations in the form of taxes on the money which comes into their treasury, and it has been seriously questioned in several of the states, whether Congress could tax the

[Susquehanna Canal Company *v.* Commonwealth.]

judicial proceedings. The decision of the honorable secretary, although a correct exposition of the laws of Congress under their wording, and the connection between the state and Federal governments, has little bearing on the present case, at least is nowise conclusive.

" It is claimed, however, that the imposition of this tax impairs the obligation of the contract between the debtor and creditor ; that to the extent of the tax it reduces the claim. All property, whether real, personal or mixed, is subject to taxation, and although its value may be thereby lessened, yet every member of society knows that he must contribute to the support of the government in proportion to his means and the amount of property protected. The debt due is no more sacred than the land which he has bought and for which he has paid the state, yet, in the absence of express contract, it is taxable for all time, or so long as the government requires revenue.

" It is immaterial to the creditor whether he pays the tax directly or it is advanced under authority of law by his debtor and deducted from the obligation. That the tax laws do not impair the obligation of the contract has been repeatedly decided by the courts of this state, and not held otherwise by any courts that we are aware of.

" Certainly the state of Pennsylvania might require the assessment of a tax on every mortgage, judgment or bond found of record or due here, and if the same was not paid collect it by attaching the claim. The system adopted is only a more convenient and less expensive method of collecting the tax. The case of Jackson *v.* Northern Central Railway Company, 7 Wall. 262, decided by the Supreme Court of the United States, has been pressed on our attention as ruling that as the non-resident of the state could not be directly taxed, therefore his debt due in Pennsylvania was also exempt. But that case is disregarded by our own Supreme Court, in Maltby *v.* Reading Railroad Company, and many other cases reported and unreported. The court declared that it was not a correct exposition of our tax laws. We are not bound by the decisions of our Supreme Court, except in cases arising under the Constitution of the United States, or where the Federal judiciary has superior jurisdiction. Should these courts hold that this tax impairs the obligations of the contract, which is scarcely possible, our judiciary must give way. It might possibly be decided, as intimated in the dicta of some very able judges, that the states must have jurisdiction either over the persons or the real or strictly personal property of non-residents before they can tax them, and that taxes assessed on their debts, as is done in Pennsylvania, is in violation of the law of nations ; therefore, the Federal courts may exercise the power of declaring our laws a violation of international rights, and thus set them at nought.

[Susquehanna Canal Company v. Commonwealth.]

When they do so, the judiciary of Pennsylvania must conform to that ruling.

" On the whole, the jury is instructed that every point of defence raised has failed, and your verdict must be in favor of the Commonwealth for the amount found due on the settlement, with interest thereon, at the rate of twelve per cent. per annum, from the expiration of two months from the date thereof."

The court negatived all the defendant's points for the reasons given in the charge.

The verdict was for the Commonwealth for $21,930.82.

The defendants removed the record to the Supreme Court by writ of error and assigned for error the denial of their points.

*J. E. Gowen*, for plaintiffs in error, examined, compared and discussed the several Acts of Assembly of Pennsylvania, relating to taxation of debts, &c. He cited also as to what was intended by "money owing by solvent debtors :" Hoyt v. Commissioners, 9 Smith N. Y. 224; State v. Ross, 3 Zabriskie 525; Davenport v. Mississippi & M. Railroad, 12 Iowa 539; Spangler v. York Co., 1 Harris 322.

*J. C. Knox* and *F. C. Brewster*, Attorney-General, for Commonwealth, referred to the several Acts of Assembly; Maltby v. Reading & C. Railway, 2 P. F. Smith 140; Pittsburg, F. W. & C. Railroad v. Commonwealth, 16 Id. 73; Delaware, L. & W. Railroad v. Commonwealth, Id. 64; Easton Bridge Co. v. Northampton Co., 9 Barr 415; Dobbins v. Erie Co., 16 Peters 447; Bank of Commerce v. New York, 2 Black 620; McCullough v. Maryland, 4 Wheaton 116; Passenger Cases, 7 Howard 452; Biddle v. Commonwealth, 10 S. & R. 408.

Judgment was entered in the Supreme Court, May 27th 1872.

PER CURIAM.—The subjects of the exceptions taken in this case have commanded our attention, and we are of opinion that nothing more is needed to be said in regard to them than that which has been said by the learned judge in his charge to the jury. The judgment is therefore affirmed for the reasons therein stated.

Judgment affirmed.