The City Council, of Augusta *v.* Hudson.

| 88 | 599 |
| 94 | 136 |
| 88 | 599 |
| 99 | 282 |
| 88 | 599 |
| 126 | 711 |

1. The City Council of Augusta being a corporation chartered by the State of Georgia, has no municipal functions to perform in the State of South Carolina.  As the owner and keeper of a toll-bridge over the Savannah river, it is liable for negligence in fail-

ing to keep the abutment resting upon the South Carolina shore in safe condition, for use by customers, its ownership and use of the bridge extending throughout the whole length thereof, including such abutment. This liability holds though it may be the law of South Carolina that a municipal corporation of that State would not be liable for like negligence touching a similar bridge owned by it.

2. Where the plaintiff alleges in his declaration that he was injured in consequence of the absence of a guard-rail on one of the abutments of a bridge, in order to recover he must show by evidence that this was true; but in such case it was inaccurate to charge "that he must show there was no guard-rail connected with the bridge," this language being too comprehensive, because it would seem to apply to the whole bridge and not merely to the particular abutment.

3. When the plaintiff in an action against the owner of a toll-bridge proves his injury and the owner's negligence as alleged, he is not bound to go further and prove his own diligence, want of care on his part being matter of defence.

4. This being the first grant of a new trial, and the charge of the court not being wholly free from error, there was no abuse of discretion in ordering another trial.

December 7, 1891.

Municipal corporations. Bridges. Negligence. Charge of court. New trial. Before Judge RONEY. Richmond superior court. October adjourned term, 1891.

Hudson sued the City Council of Augusta, alleging that defendant had under its control and management, for pecuniary gain, a bridge across the Savannah river, connecting the city of Augusta with Hamburg, S. C.; that plaintiff paid the keeper of the bridge the toll required of him, and in crossing the bridge had reached the abutment on the S. C. side of the bridge, the abutment being a part of and belonging to the bridge, with a mule and wagon, and on account of the absence of a railing on the S. C. abutment of the bridge he, without fault or carelessness on his part, and his mule and wagon were precipitated from the bridge; and that the bridge was not reasonably safe for passage, which was known to defendant. To this declaration defendant interposed

a general demurrer, which was overruled. At the conclusion of the plaintiff's evidence defendant moved for a nonsuit, which motion was overruled. The jury returned a verdict for the defendant, and the court granted a new trial. Defendant excepted on the grounds, that the court erred in overruling the demurrer, and in holding that the declaration was sufficient in law without setting forth any statute of S. C. authorizing the suit, and that under the laws of S. C. the plaintiff had a right to sue; that the court erred in overruling the motion for a nonsuit, because there was no evidence that plaintiff had the right to sue under the laws of S. C., and because the evidence showed that the absence of the guard-rail, as alleged, was not the proximate cause of the injury; and that the court erred in granting a new trial, because the evidence demanded the verdict for defendant.

There was evidence for plaintiff that on the S. C. side of the bridge there is a brick abutment, thirty or forty yards long and a part of the bridge, with no banisters, the railing on the bridge only extending to the end of the bridge proper. There was no railing along the abutment. Just as plaintiff reached the abutment and was on the last plank of the bridge his mule became frightened at a railroad train near by, and a negro who was in the wagon grabbed the lines, and in two lunges the mule threw the negro off on the upper side where there was no bank to fall down, and the mule with plaintiff and the wagon off sidewise on the side where there was an embankment about ten feet high, the embankment being part of the abutment. Plaintiff could not jump out on the side on which the negro got out, because the negro was on that side. If the sort of railing now on this abutment (a large piece and two railings as high as plaintiff's head, extending out as far as the bricks of the abutment run) had been there, the accident would have

been prevented; if there had been anything at all there plaintiff could have got out of the wagon, but there was nothing there, and plaintiff was on the lower side of the wagon. The engine of the train referred to was coming along very slowly, as they usually run, and they always ring the bell; and whether it was the bell or what it was that frightened the mule plaintiff could not tell, though he guessed that he did swear that as he drove on the abutment the engine came along ringing the bell as it passed over the S. C. railway bridge, and his mule took fright and became unmanageable and jumped off the abutment where there was no railing. The accident happened not ten feet from the bridge, and there was no protection of any sort up to the bridge; the mule was kind and tame; the railroad was twenty-five or thirty feet from the abutment, and the train was between a point from fifty to seventy-five yards from the bridge, and the bridge; he would have been able to regain control of the mule if there had been a railing on the abutment, and knew he could have done so by the railing now on the abutment; knew that the mule could not have knocked the railing down so as to have gone over the abutment. In answer to the question, "Now, when your mule took fright and became unmanageable in consequence of the ringing of the bell and blowing of the whistle of the train, you were trying to pull your mule towards the train?" he said: "Yes, sir. The mule was unmanageable and went off at this place." The abutment had been without a railing several months, even without a sill to the abutment; there used to be a go· t railing for one hundred feet in length there. The negro above mentioned testified that had there been a railing or sill on the abutment the mule could not have gone over; that the mule was badly frightened as the train came along, and witness and plaintiff could not control her. The plaintiff introduced one Keener, the

superintendent of work at the bridge, under the defendant, and showed by him that the bridge is under defendant's control and management, and that it was a toll-bridge in March, 1887. On cross-examination this witness testified that at the time of the accident he had a piece of timber thirty feet long, twelve by twelve, to twelve by fourteen, supported by blocks eight by six, at the end of the Carolina side, for protection; that at the end of this log, about thirty feet, there was a telegraph pole and then the sign of a business house; that the wagon which witness saw the evening of the accident, was thirty-three to thirty-four feet from the end of the bridge in the field, nearly behind this sign; and that the timber was about eighteen inches above the ground. On redirect examination he testified that he thought plaintiff went off the abutment thirty-five feet from the bridge; that the place where he fell off could not have been more than four feet and four inches high; that the railing now covers this point, but at the time of the accident this point was unprotected by anything; that as the officer in charge of the bridge witness knew there was no railing where this man fell off, but "we" never apprehended any danger; that the accident could not have happened while the old fence was there without knocking down the fence; that "we" allowed the old fence to rot down after the fence law went into effect.

The motion for new trial alleged that the verdict was contrary to law, evidence, etc., and that the court erred in charging: "To authorize the plaintiff to recover, you must believe from the evidence that he has shown that there was no guard-rail or protection connected with said bridge, for if you find from the evidence that there was a guard-rail or protection, then the plaintiff cannot recover, because he alleges that on account of the absence of a railing on the South Carolina abutment of said bridge, he was precipitated therefrom and injured.

But if there was a guard-rail there, then that would be an end of the case, because he charges that it was the absence of the guard-rail that caused the injury." Plaintiff insisted that the jury must have understood from this charge, that they were precluded from considering the question of defendant's negligence in not extending its alleged protection to the point where Keener said he saw the wagon the afternoon of the accident, and to which point he said the guard-rail did not extend; and that the jury were thus directed to find for defendant if there were a protection (the only protection claimed by defendant being a sill eighteen inches high), without considering whether it amounted to a railing, the absence of which plaintiff alleged rendered the abutment not reasonably safe and caused the accident.

The court further charged: "If you believe from the evidence that the city was negligent by not having a guard-rail, and that plaintiff was well acquainted with the fact and he could have avoided it by the exercise of ordinary care and diligence, then he can't recover." It was insisted that the court here intimated an opinion that by the use of ordinary care, with knowledge of the defect, plaintiff could have avoided the injury.

Also : "Before plaintiff can recover in this case, he must show that he did nothing that he ought not to have done and neglected to do nothing he ought to have done." Error because, though the jury believed that both plaintiff and defendant were at fault, but plaintiff could not by the exercise of ordinary care and diligence have avoided the consequences of defendant's negligence, they could not, under this instruction, have found a verdict for plaintiff, even diminished by the amount of default attributable to plaintiff.

JOHN S. DAVIDSON, for plaintiff in error.
E. T. WILLIAMS and H. PHINIZY, *contra.*

LUMPKIN, Justice.

1. In March, 1887, the City Council of Augusta owned and controlled a bridge across the Savannah river, connecting the city with the State of South Carolina, and charged tolls for the use of the same. The plaintiff's action seeks to make the city council liable for injuries sustained by him resulting from the defendant's alleged negligence in failing to provide a suitable railing to the abutment of the bridge on the Carolina side. It was insisted by counsel for plaintiff in error that under the law of South Carolina, a municipal corporation of that State would not be liable for an injury of this kind, and that accordingly, as this injury occurred in South Carolina, the plaintiff could not recover. It is unnecessary to determine what the law of South Carolina is on this subject. The City Council of Augusta certainly has no municipal or governmental functions to perform beyond the limits of this State. So far as keeping and maintaining this bridge for gain is concerned, this corporation entered the State of South Carolina to engage in a private business and enjoy the profits thereof. Consequently it must perform the duties and assume the burdens incident to carrying on this business. Whatever immunity, if any, from liability to actions of this sort it may have possessed at home, as a part of the government, the same was lost when it divested itself of the attributes of sovereignty by undertaking such a business in another State. The doctrine here asserted is well supported by authority. See Dillon's Municipal Corporations, §§966, 980, 981, 982, 983, and cases cited; Bank of the U. S. v. Planters' Bank of Ga., 9 Wheat. 904; Briscoe v. Bank of Kentucky, 11 Pet. 257; W. & A. R. R. Co. v. Taylor, 6 Heiskell (Tenn.), 408, 414.

2. The plaintiff having alleged that there was no guard-rail on the abutment of the bridge on the South

Carolina side and that in consequence of the absence thereof he was injured, it is necessary, of course, to authorize a recovery, that he should prove these allegations to be true. The court among other things charged " that he must show there was no guard-rail connected with the bridge." This charge required the plaintiff to prove more than was necessary, in this respect. It was entirely immaterial for the purposes of the case whether or not the abutment on the Augusta side, or the bridge itself, had railings upon them, the presence or absence of such railings having nothing whatever to do with the injuries sustained by the plaintiff.

3. The plaintiff, having proved his injury and the negligence of the defendant by which it was caused, made out a *prima facie* case. Whether or not by the exercise of proper diligence he could have prevented the injury, was a matter of defence.

4. The proposition stated in the fourth head-note requires no further comment.        *Judgment affirmed.*