(No. 12991.—Judgment affirmed.)

THE PEOPLE *ex rel.* M. P. Murray, County Collector, Appellee, *vs.* THE CITY OF ST. LOUIS, Appellant.

*Opinion filed February 18, 1920—Rehearing denied April 8, 1920.*

1. TAXES—*property should be assessed as to actual equitable rights on date of assessment.* The taxable status of persons and property relates to a day certain in each year, and property should be assessed according to actual equitable rights on the date of the assessment.

2. SAME—*when part of bridge built for railroads should be assessed although not in use.* Where the lower deck of a free bridge over a river forming the boundary between Illinois and an adjoining State is so constructed as to permit the use of railroad and interurban cars, such part of the bridge on the Illinois side is subject to taxation although on the day of the assessment the railroad approach had not been completed and no arrangement made for the use of the bridge by any railroad or interurban company or connection made with any railroad or street car line.

3. SAME—*the exemption of municipal property applies only to municipal corporations in Illinois.* Section 3 of article 9 of the constitution, exempting municipal property from taxation, refers only to municipal corporations in Illinois.

4. SAME—*all property is subject to taxation unless exempted by section 3 of article 9 of constitution.* The enumeration in section 3 of article 9 of the constitution as to the property that may be exempted from taxation is a limitation upon the power of the legislature to exempt any other property, either by a general or special law, and all property is subject to taxation unless exempted by said section or statutes passed in accordance therewith.

5. SAME—*when bridge constructed under authority of an act of Congress may be taxed by the State.* The fact that a bridge over a river forming the boundary between Illinois and an adjoining State has been constructed by a city in an adjoining State under authority of an act of Congress does not preclude the taxation of that part of the bridge in Illinois, where the Federal government by said act of Congress did not retain exclusive power of legislation in all matters pertaining to the bridge.

6. SAME—*when notice of hearing to assess a bridge is sufficient.* A notice of a hearing to assess the approaches of a bridge owned by a municipality of an adjoining State and extending from said State across a river into Illinois is sufficient for an assessment of

that part of the bridge in Illinois as well as the approaches where it is sent to the officers of the municipality and they are present at the hearing, as a bridge and its approaches may be assessed as one continuous structure.

7. SAME—*bridge must be property of railroad company to be assessed by Board of Equalization.* The assessment of a bridge which is to be used for railroads need not be made by the State Board of Equalization where the bridge is not the property of a railroad company.

APPEAL from the County Court of St. Clair county; the Hon. JOSEPH B. MESSICK, Judge, presiding.

CHARLES H. DAUES, and KRAMER, KRAMER & CAMPBELL, for appellant.

HUBERT E. SCHAUMLEFFEL, (H. L. BROWNING, and A. B. DAVIS, of counsel,) for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellant, the city of St. Louis, filed objections in the county court of St. Clair county to the application of the county collector of that county for judgment of sale for the taxes of 1918 levied by the authorities of that county against that portion of the municipal bridge situated in said county. The objections were overruled and judgment entered in the county court. This appeal followed.

It appears from the record that the legislature of Missouri passed an act in 1905 authorizing the city of St. Louis to construct a bridge across the Mississippi river between St. Louis, Missouri, and East St. Louis, Illinois. Thereafter, in 1906, the authorities of St. Louis passed an ordinance authorizing the issuing of bonds, the proceeds thereof to be used for the construction of said bridge, to be used as a municipal bridge for public use by railroads, street cars, vehicles of all kinds and pedestrians over and across the Mississippi river, and located within the limits of the city of St. Louis and within the State of Illinois. Thereafter, in June, 1906, the United States Congress passed an

act authorizing St. Louis to construct a bridge across the Mississippi river for use by railroads, street cars, vehicles of all kinds and pedestrians and to maintain and use the same. Thereafter St. Louis took the necessary further steps to provide for the construction of such bridge. The city of East St. Louis later passed ordinances granting to the city of St. Louis overhead easements along and across certain streets, alleys and public highways and vacating other streets and alleys for the erection of such bridge and its approaches in East St. Louis. Under the authority thus obtained the city of St. Louis constructed a double-deck bridge and partially completed the approaches on the Illinois side, at a cost of about $6,250,000. The bridge proper is a double-deck structure, consisting of three spans across the Mississippi river, each 700 feet in length. The upper deck is prepared for the traffic of vehicles, pedestrians and street cars; the lower deck is prepared and constructed for railway purposes, for steam and interurban cars. The approach on the east side is a double-deck structure for a distance of over 2000 feet, where the approaches diverge, the upper deck or highway running in a northeasterly direction for about 3000 feet, the railroad approach extending southeasterly for about 11,000 feet. The structure is built of steel and concrete masonry. The upper deck was originally paved with wooden blocks in the center for the use of vehicles, and later with asphaltum, having sidewalks on each side for the use of pedestrians. Rails for a double-track street car line are laid in the center portion of the upper deck, although at the time of the assessment they had not been connected with any street car line and had never been used for street car purposes. April 1, 1918, at the time this assessment should be levied according to the statute, the railroad approach was not completed, and the evidence shows that no arrangement had been made with any railroads whereby the lower deck of the bridge could be used to advantage for the city of St. Louis, except there was passed by the munici-

pal assembly of St. Louis an ordinance giving the Southern Traction Company of Illinois authority to use the municipal bridge and pay compensation therefor, but the negotiations were never completed, and there is no evidence tending to show that it will ever necessarily be used for railroad purposes. The upper roadway of the bridge was opened for use in January, 1917, and has been used generally since that time for the passage of vehicles and foot passengers, and no charge has ever been made for such use, and there is no evidence tending to show that there was ever any intention to make charges for vehicles or pedestrians. Indeed, the evidence tends to show that everything has been done by the city of St. Louis to furnish a free highway for pedestrians and vehicles between East St. Louis and St. Louis over the upper deck of this structure. The city of St. Louis has a right to charge a license fee for the use of the bridge by public service corporations, having the intention and purpose in mind to use this revenue to aid in maintaining the bridge and keeping it in repair, but no such license had ever been issued at the time of the hearing and no such revenue has ever been derived in any way from the use of the bridge for the use of said city.

The local assessor of East St. Louis did not make an assessment on any portion of the bridge or approaches for the year 1918. On August 6 of that year the board of review of St. Clair county took steps to arrange for the proper description of the east approaches of the bridge in St. Clair county, and on August 13 of that year notice was sent by the board of review to C. H. Daues, chief legal adviser of the city of St. Louis, to the effect that he could appear before the board on August 20 and show cause why an assessment should not be entered against the railroad approach of the bridge. Thereafter a notice was served on Daues that an assessment of $1,200,000 would be made against the railroad approach of the bridge and that he could appear at a hearing on said assessment on September 4, 1918, if

he so desired. On September 4 there was a hearing before the board, argument made and briefs submitted on behalf of the public authorities of St. Clair county and in behalf of the city of St. Louis. On September 5, 1918, an assessment was made upon the east half, of the bridge and approaches in Illinois, fixing the full value at $600,000. Taxes were extended under this assessment on that part of the bridge in Illinois, amounting to $17,337.20. It was against these taxes that the city appeared in the county court on the application for judgment and filed said objections, on the ground that the taxes were levied without authority and therefore illegal.

Counsel for the city of St. Louis contend that the bridge is exempt from taxation under the statute of this State, which reads:

"Sec. 1. That whenever any bridge used exclusively for persons and vehicles, across any stream forming the boundary line between this and an adjoining State, shall be made a public highway free to all persons and vehicles, such bridge shall not be subject to taxation in this State: *Provided*, that nothing in this act shall prevent the owner or owners * * * from making and enforcing by fine such rules and regulations as may be deemed necessary for the management of such bridge." (Laws of 1889, p. 63.)

Counsel argue that as this bridge on April 1, 1918, when the assessment was legally levied, was used only as a free bridge, it comes plainly within the terms of this statute. No authority is cited by either counsel directly on the question as to whether this bridge, not being used at the time of the assessment for railroad purposes and not being then completed so that it could be so used, should be assessed as if it were used for railroad purposes or only as a free bridge, as it was then used solely on its upper structure for vehicles and foot passengers. The general rule is that the "taxable status of persons and property relates to a day certain in each year. When the law thus provides no taxes

can be legally assessed and levied for a particular year un-
less the conditions requisite to liability exist on the day
fixed; and no changes in ownership, fluctuations in value,
non-residence, removal or destruction of the property, or
the like, occurring subsequent thereto, can be considered in
making or reviewing an assessment." (27 Am. & Eng.
Ency. of Law,—2d ed.—662, and cases cited.)  Among
the authorities there cited are *Shaw* v. *Dennis*, 5 Gilm. 405,
*Condit* v. *Widmayer*, 196 Ill. 623, and others, all of which
tend to support this doctrine.  The reasoning of the authori-
ties with reference to the assessment of public lands that
have been purchased by private individuals but for which
the patent has not been granted because certain details have
not been complied with, yet, if the equitable title belongs
to the purchaser, holding them subject to taxation, tends to
support the doctrine laid down by the authorities just cited.
(37 Cyc. 866-868, inclusive, and authorities there cited.)  It
has also been held that the possessory interests which pri-
vate individuals may hold in the public lands of the United
States for mining, agricultural and various other purposes
constitute a species of property which may be subject to tax-
ation by the State, and this tends also to support the con-
clusion that property should be assessed as of the date of
the assessment according to actual equitable rights. (37 Cyc.
869, and authorities cited.)  In the recent case of *Sanitary
District of Chicago* v. *Young*, 285 Ill. 351, this court had
under consideration the question whether the Butterfly dam
erected by the Sanitary District should be taxed.  The evi-
dence showed that it had been erected for the purpose of
protecting the people below it from the danger of overflow;
that it never had been used and was no profit to the district
and had no market value.  It was there held that the fact
that the dam had not been a source of revenue and had
never been used for any purpose, and that it did not have
any fair cash market value, were not good reasons for say-
ing that it was not taxable, and it was held subject to the

tax. Under the reasoning of that decision it must be held that the lower deck of the bridge, whether or not now in use by railroads or interurban cars for transportation purposes, would be subject to the tax under the conditions shown by this record.

The question whether the upper deck and the lower deck could be separated for taxable purposes under the reasoning of this court in *First M. E. Church* v. *City of Chicago,* 26 Ill. 482, *Northwestern University* v. *People,* 80 id. 333, and *Dunne* v. *County of Rock Island,* 283 id. 628, was not raised by either party in the court below or any proof offered along that line, hence it is unnecessary for us to consider or decide that question.

Section 3 of article 9 of the constitution of 1870 provides: "The property of the State, counties, and other municipal corporations, both real and personal, and such other property as may be used exclusively for agricultural and horticultural societies, for school, religious, cemetery and charitable purposes, may be exempted from taxation; but such exemption shall be only by general law. In the assessment of real estate incumbered by public easement, any depreciation occasioned by such easement may be deducted in the valuation of such property." Under this constitutional provision it cannot very well be argued that this bridge is exempt as a municipal corporation's property as the municipality owning it is not a municipality of this State, and it is clear that this section referred only to the municipal authorities within this State. Moreover, there is a provision in this State for taxing bridges across navigable streams forming the boundary line between Illinois and other States. (Hurd's Stat. 1917, par. 354, p. 2497.) All property is subject to taxation unless exempted by the constitution or statutes passed in accordance therewith. (*First Congregational Church of DeKalb* v. *Board of Review,* 254 Ill. 220; *Congregational Publishing Society* v. *Board of Review,* 290 id. 108.) "The intention of a State to bind it-

self by an exemption must be clear, as all presumptions are against it. (Cooley on Taxation, 54.) The right to levy and collect taxes is necessary to the existence and support of government. Such right will not be presumed to have been surrendered except by clear words. Its surrender will not be extended by implication. Exemptions from the burdens of taxation are to be construed strictly, and cannot be made by judicial construction to embrace other subjects than those plainly expressed in the act." *(In re Swigert,* 123 Ill. 267.) The enumeration in section 3 of article 9 of the constitution as to the property that may be exempted from taxation is a limitation upon the power of the legislature to exempt any other property, either by a general or special law. *(Consolidated Coal Co.* v. *Miller,* 236 Ill. 149, and cases there cited.) The conclusion must necessarily follow from reading the statute relied on, in connection with said section 3, that this bridge as constructed is not exempt under that statute.

It is also argued by counsel for appellant that as this bridge was constructed under the authority of an act of Congress it cannot be taxed by the State authorities. It is clear that by this act of Congress the Federal government did not retain exclusive power of legislation on all matters pertaining to this bridge, therefore, under the reasoning of *Moline Water Power Co.* v. *Cox,* 252 Ill. 348, the State authorities retained the power to tax the bridge. The Federal government has authorized the construction of several railroad bridges over the Mississippi river near St. Louis, and one of them,—the Eads bridge, as we understand it,— is not only used by railroads but it is used for street cars, vehicles and pedestrians, and yet it has been taxed by the State authorities. *People* v. *St. Louis Merchants Bridge Co.* (*ante,* p. 95.)

It is further objected by counsel for appellant that the assessment is illegal because the notice given by the board of review to appellant's officers as to the original assessment

was only as to assessing the railroad approaches and not as to any part of the bridge itself. No question appears to have been raised in the county court on this point. The proper officials of appellant were notified and were present at the hearings with reference to this assessment and were familiar with every step that was being taken by the public authorities with reference thereto, therefore the purposes of a notice as required by statute and by the reasoning of this court in *Carney* v. *People,* 210 Ill. 434, were fully complied with. In *Keokuk and Hamilton Bridge Co.* v. *People,* 176 Ill. 267, this court held that a bridge and its approaches need not necessarily be assessed separately; that the most feasible way was to assess them together as one continuous structure.

Counsel for appellant further argue that if this bridge is assessable because it is to be used for railroads, the assessment should be levied by the State Board of Equalization and could not be by the board of review. This court has held that in order for a railroad company to raise the question that a bridge must be assessed by the State Board of Equalization as railroad track, such property must not only be used for railroad purposes but must also be the property of the railroad company. (*Chicago and Alton Railroad Co.* v. *People,* 153 Ill. 409.) On this record it is clear there is no merit in this objection.

The argument is made by counsel for appellant that under the Federal statutes and by the decision of the Missouri courts this bridge must be considered as a free public highway. Nothing is stated in the act of Congress granting authority to build this bridge to indicate that the bridge was to be any different from any other bridge constructed across the Mississippi river or that it was to be in any sense considered a free public highway. (1 U. S. Stat. at Large, 1905-07, p. 461.) In *Haeussler* v. *City of St. Louis,* 205 Mo. 656, when construing the ordinances and statute under which this bridge was constructed, the Missouri Supreme

Court stated, in terms, (p. 659,) that the law granted express authority "to maintain, use and operate said bridge or bridges, tunnel or tunnels, either as toll or free bridges or tunnels." Furthermore, regardless of whatever argument may be consistently made as to the bridge itself being a free public highway, it seems somewhat difficult to consider that the railroad approach on the Illinois side, which is over two miles long and built expressly for railroad uses, can be considered a free public highway. It is obvious that there is nothing to prevent the city of St. Louis from charging toll at any time for foot passengers, vehicles, street cars or railroad traffic if it decides so to do.

In view of our holdings on the points already discussed it is not necessary for us to consider or decide the other questions raised in the briefs.

The judgment of the county court will be affirmed.

*Judgment affirmed.*