STATE v. CITY OF HUDSON.[1]

May 5, 1950.

No. 35,104.

[1]Reported in 42 N. W. (2d) 546.

*Wendell A. Petersen,* City Attorney, *Cole Oehler,* and *Linn Firestone,* for appellant.

*J. A. A. Burnquist,* Attorney General, *Charles P. Stone,* Assistant Attorney General, and *William T. Johnson,* County Attorney, for the State.

PETERSON, JUSTICE.

The state having recovered a judgment for the amount of personal property taxes for the year 1947 assessed on the portion of the interstate bridge owned and operated by the city of Hudson, Wisconsin, located in Washington county, Minnesota, the city appeals.

The question for decision is whether a municipality of a foreign state owning and operating a toll bridge located partly in such state and partly in this state is entitled, under a constitutional provision (Minn. Const. art. 9, § 1) exempting from taxation public property used exclusively for any public purpose, to exemption from taxation of the portion of such bridge located in this state.

The interstate toll bridge owned and operated by the city of Hudson, Wisconsin, extends from that city across the St. Croix River into Washington county, Minnesota. The bridge was constructed under authorization granted by 36 Stat. c. 119, p. 921, and 34 Stat. c. 1130, p. 84, 33 USCA, § 491, et seq. It has been designated as part of the route of U. S. highway No. 12. Toll rates are fixed by the War Department of the United States. All tolls are collected in the state of Wisconsin and are paid into the treasury of the city of Hudson. No part of the operation of the bridge inures to any person or to any other corporation, public or private. The personal property tax in question was imposed upon the portion of the bridge located in Washington county, Minnesota.

The city claims that the portion of the bridge located in Minnesota is exempt from taxation by the state of Minnesota under the provision of Minn. Const. art. 9, § 1, which reads:

"* * * public property used exclusively for any public purpose, shall be exempt from taxation, * * *."

In support of its claim, the city contends that it is a public corporation of the state of Wisconsin; that as such it owns and operates the bridge; and that, because it is a public corporation and as such owns and operates the bridge, the bridge is public property used exclusively for public purposes and as such is exempt from taxation by the state of Minnesota. In opposition thereto, the state contends that, while the city is a public corporation of the state of Wisconsin and as such owns and operates the bridge, the city has no attributes of a *public* nature within the state of Minnesota so far as concerns its ownership and operation of the portion of the bridge located therein, and that, on the contrary, the city's status in Minnesota is the same as that of any *private* corporation owning and operating property within this state. The state's theory is that the *public* character of the city of Hudson ceased at the state line between the states of Wisconsin and Minnesota and that, after the city crossed such line, it had no *public* attributes of any kind. No point has been made that either the federal authorization to construct the bridge or the federal designation thereof as part of the route of the U. S. highway mentioned has any bearing on the question to be decided.

A state adopts a constitution for its own government and not that of other states. It could not be otherwise under our federal system of government, for the reasons that thereunder the jurisdiction of a state is coextensive with its boundaries and operative upon all persons and things located therein (First Trust Co. v. Matheson, 187 Minn. 468, 246 N. W. 1, 87 A. L. R. 478), and that, conversely, such jurisdiction does not extend beyond its boundaries. In re C. A. Taylor Logging & Lbr. Co. (D. C.) 28 F. (2d) 526; 59 C. J., States, § 3. It makes no difference in this connection

that the state, as here, has concurrent jurisdiction with other states over boundary waters such as rivers. See, State v. George, 60 Minn. 503, 63 N. W. 100; 6 Dunnell, Dig. § 8826; Roberts v. Fullerton, 117 Wis. 222, 93 N. W. 1111, 65 L. R. A. 953, and note. Such concurrent jurisdiction of one state does not extend to permanent structures within the boundary of the other state, even though they may be attached to the river bed. Wedding v. Meyler, 192 U. S. 573, 24 S. Ct. 322, 48 L. ed. 570, 66 L. R. A. 833; Buck v. Ellenbolt, 84 Iowa 394, 51 N. W. 22, 15 L. R. A. 187; Roberts v. Fullerton, *supra;* 49 Am. Jur., States, Territories, and Dependencies, § 24.

Because a municipal corporation is organized under authority of the state wherein it is situated with subordinate governmental power—legislative, executive, and judicial—to administer the local and internal affairs of the community and to assist locally in the civil government of the state as a branch thereof, a municipal corporation derives its "public character" from the law of the state creating it. 49 Am. Jur., States, Territories, and Dependencies, § 6.

It follows as a logical consequence and as elementary law that a state acquiring ownership of property in another state does not thereby project its sovereignty into the state where the property is situated. The public and sovereign character of the state owning property in another state ceases at the state line, with the consequence that its ownership of property in the foreign state is in its corporate capacity without any sovereign or public attributes. To all intents and purposes, ownership by a state of property located in another state is the same as that of a private corporation. Georgia v. City of Chattanooga, 264 U. S. 472, 44 S. Ct. 369, 68 L. ed. 796; Susquehanna Canal Co. v. Commonwealth, 72 Pa. 72. The rule applies to a municipality owning property in a state other than the one of its creation. As said in City of Cincinnati, Ohio, v. Commonwealth, 292 Ky. 597, 604, 167 S. W. (2d) 709, 714:

"* * * A municipality operating beyond the boundaries of the sovereignty creating it, is universally regarded as a private cor-

poration with respect to such operations. Even a state may not claim sovereign immunity for its business enterprises conducted beyond its borders."

"Exemption" of public property from taxation involves an exercise of the state's governmental power with respect to its internal economy. What is denominated an *exemption* from taxation of public property used for public purposes is in fact nothing more than a declaration of *immunity* therefrom which would exist in the absence of a provision for exemption. Exemption from taxation of privately owned property is a public grant in the nature of a favor justifiable upon grounds of public policy. Immunity from taxation is an attribute of sovereignty, and, because such is its nature, it is presumed that the sovereign would not tax itself. As held in Foster v. City of Duluth, 120 Minn. 484, 140 N. W. 129, 48 L. R. A. (N. S.) 707, there is a clear distinction between *exemption* and *immunity,* in that *exemption* from taxation involves the supposition that the property so exempted otherwise would be subject to taxation, and *immunity* from taxation involves the thought that, absent a constitutional or statutory provision for exemption, the property would not be subject to taxation because of its public nature. We there said (120 Minn. 486, 140 N. W. 130):

"* * * In the one case the property exempted is private property, which for good reasons it is deemed wise or just to relieve from the burden of taxes that it would otherwise be obliged to sustain; in the other case [that of public property used for public purposes] the property is owned by the state, or by its agencies, is devoted to a public use, and is not subject to taxation for reasons that are different in character, among which may be suggested the fact that the taxation of public property owned by the state or its municipal divisions would mean that the state would be taxing itself in order to raise money to pay over to itself, and the reason, before suggested, that the collection of such taxes might result in destroying the public character of the property."

So-called tax-exemption provisions in constitutions and statutes generally (as the Foster case, *supra*, points out that Minn. Const. art. 9, § 1, does) "exempt" from taxation both private property otherwise taxable and public property otherwise not taxable anyway. Such provisions, insofar as the exemption from taxation of public property means property belonging either to the state or and a continuation of the rule, in the absence of constitutional and statutory provisions to the contrary, that such property is not subject to taxation. State ex rel. Taggart v. Holcomb, 85 Kan. 178, 116 P. 251, 50 L. R. A. (N. S.) 243, Ann. Cas. 1912D, 800; 2 Cooley, Taxation (4 ed.) § 622, p. 1318; 61 C. J., Taxation, § 359. The Foster case, *supra*, in effect so holds.

In accordance with the well-settled principles which have been stated, it is generally held that an exemption from taxation of public property means property belonging either to the state or a political subdivision thereof. Property of a municipality of another state located in the taxing state is not exempt from taxation under an exemption of public property used exclusively for public purposes. City Council of Augusta, Ga., v. Timmerman (4 Cir.) 233 F. 216; Spokane Valley L. & W. Co. v. Kootenai County, Idaho (D. C.) 199 F. 481; People ex rel. Murray v. City of St. Louis, 291 Ill. 600, 126 N. E. 529 (interstate bridge); State ex rel. Taggart v. Holcomb, *supra;* City of Cincinnati, Ohio, v. Commonwealth, *supra;* City of New Orleans v. Salmen Brick & Lbr. Co. 135 La. 828, 66 So. 237; 51 Am. Jur., Taxation, §§ 557, 564 (note 8). See, Town of Warrenton v. Warren County, 215 N. C. 342, 2 S. E. (2d) 463. The plain reasons for the rule are aptly stated in the Taggart case, *supra*, where the court said (85 Kan. 187, 116 P. 254):

"And so it may be said here that when a city of the state of Missouri comes into Kansas, it comes as a private party and brings with it none of the prerogatives of sovereignty. The general rule is that all property, not expressly exempted, is taxable, and the fact that the state does not tax itself and its municipalities to obtain revenue for itself is no reason why a foreign mu-

nicipality, who is here in the capacity of a private proprietor and whose property receives protection from the state, should contribute nothing toward that protection or should escape paying the taxes imposed upon other owners of property. It is clear that the exemptions from taxation, provided for the state and for cities and municipalities of the state, are only declaratory of the immunity that would be granted on fundamental principles of government and that the cities and municipalities referred to in the statute and constitution are those of our own state."

Expressions in our cases indicate that such is the common understanding of the intended application of Minn. Const. art. 9, § 1. For example, in County of Anoka v. City of St. Paul, 194 Minn. 554, 557, 261 N. W. 588, 590, 99 A. L. R. 1137, we spoke of the provision as including "Any property owned by the state or by any of *its* subdivisions, such as counties, municipalities, etc., * * *." (Italics supplied.) In the Foster case (120 Minn. 486, 140 N. W. 130) *supra,* we referred to the property covered as that "of the state and of its political subdivisions, arms, or agencies, such as *cities within its borders, * * *.*" (Italics supplied.) It is difficult to comprehend how the exemption could be construed to cover property located in this state belonging to foreign states and their political subdivisions. After all, the state through its constitution was legislating with respect to matters of which it had jurisdiction and which affected its economy. Since that is true, since exemption from taxation of public property involves in the final analysis a recognition of immunity of the sovereign from taxation, since no foreign state or any municipality located therein can have any sovereign or public character within the territorial boundaries of this state, and since exemption or immunity from taxation involves the imposition upon other property of a proportionate additional tax burden and thus exemption of property located here belonging to foreign states and their political subdivisions would cause other owners of property here to be taxed for the benefit of another state and its municipalities (see, 51 Am. Jur., Taxation, § 561), it seems clear that the words "public prop-

erty used exclusively for any public purpose" in Minn. Const. art. 9, § 1, were intended to mean the public property of the state of Minnesota and of the political subdivisions thereof used for public purposes, and not the property of foreign states and their political subdivisions.

The cases relied on by the city are either not persuasive or not in point. City of Greenville, Miss. v. Miller (D. C.) 47 F. Supp. 344 (reversed [8 Cir.] 138. F. [2d] 712) held in a declaratory judgment action that the part of an interstate toll bridge situated in Arkansas was exempt from taxation under the constitution of Arkansas as construed by the highest court of that state and the act of congress authorizing the construction of the bridge. The court of appeals held that both these grounds were untenable; that the questions raised were not proper for adjudication in a declaratory judgment action; and that the action should be dismissed without expression of any opinion as to the claimed exemption. City of Louisville v. Babb (7 Cir.) 75 F. (2d) 162, was determined under an express provision of statute granting the exemption there claimed. We have no such provisions here. On the contrary, nonexemption here is implicit in the applicable constitutional provision. Williams Institutional Colored M. E. Church v. City of New York, 275 App. Div. 311, 89 N. Y. S. (2d) 300, did not involve the question presented here at all, but rather the one whether property of a foreign religious corporation located in New York and there devoted exclusively to use for religious purposes was exempt from taxation under a statutory provision exempting from taxation property of religious corporations "wherever incorporated" used exclusively for religious purposes. The quoted words were held to evince a legislative intention that in such cases the property of foreign as well as domestic corporations should be exempt from taxation. Here, the applicable constitutional provision does not contain equivalent language. That sufficiently distinguishes the cited case. It also is to be remembered that public charities and religious bodies differ fundamentally from public corporations and bodies so far as concerns the reasons for exemp-

tion for taxation. Foster v. City of Duluth, 120 Minn. 484, 140 N. W. 129, *supra.* See, 61 C. J., Taxation, § 502.

Our conclusion is that the city is not entitled to the exemption from taxation claimed by it and that the judgment should be affirmed.

Affirmed.

[1]Reported in 42 N. W. (2d) 534.