Rose HARRIS, Plaintiff,

v.

The CITY OF CHATTANOOGA, d/b/a Electric Power Board et al., Defendants.

Civ. A. No. C79–92R.

United States District Court,
N. D. Georgia,
Rome Division.

Feb. 5, 1981.

[redacted]

---

Harry Weill, Weill, Ellis, Weems & Copeland, Chattanooga, Tenn., James S. Kilpatrick, Covington, Kilpatrick, Storey, Covington, and Durham, Rome, Ga., for plaintiff.

Robert M. Brinson, Brinson, Askew & Berry, Rome, Ga., for City of Chattanooga.

William E. Davidson, Smith, Shaw, Maddox, Davidson & Graham, Rome, Ga., for Hildebrand and Adair.

David A. Handley and Jonathan H. Waller, Gambrell, Russell & Forbes, Atlanta, Ga., for C & I.

ORDER

HAROLD L. MURPHY, District Judge.

Plaintiff's husband was electrocuted while he was working at a construction site in Rossville, Georgia, allegedly due, in part, to the negligence of the defendant City of Chattanooga, d/b/a Electric Power Board (hereinafter "Power Board") which conducts business in Georgia, and sells electric power in Walker, Catoosa and Dade Counties, Georgia. The Power Board is a proprietary division of The City of Chattanooga, a municipality which is organized and exists under the laws of the State of Tennessee.

The Power Board has moved for summary judgment premising its argument on the plaintiff's failure to provide the *ante litem* notice required by Ga.Code Ann. § 69–308 which provides in part:

> No person ... having a claim for money damages against any municipal corporation on account of injuries to person or property, shall bring any suit at law or equity against said municipal corporation for the same, without first, and within six months of the happening of the event upon which such claim is predicated, presenting in writing such claim to the governing authority of said municipality for adjustment, stating the time, place, and extent of such injury, as nearly as practicable, and the negligence which caused the same, and no such suit shall be entertained by the courts against such municipality until the cause of action therein shall have been first presented to said governing authority for adjustment.

It is undisputed that no written notice of the accident was furnished the defendant. Although the plaintiff points out that two of the defendant's agents were on the scene to investigate the circumstances, the Georgia courts have not accepted actual notice as a substitute for the written notice prescribed by the statute. *Allen v. City of Macon,* 118 Ga.App. 88, 162 S.E.2d 783 (1968). With unswerving harshness, the courts have demanded strict compliance with the writing requirement. *See, e. g., City of Calhoun v. Holland,* 222 Ga. 817, 152 S.E.2d 752 (1966); *Chiles v. City of Smyrna,* 146 Ga.App. 260, 246 S.E.2d 117 (1978); *See generally,* Sentell, The Law of Municipal Tort Liability in Georgia, 137–39 (3d ed. 1980).

[redacted] The sole issue is whether Ga.Code Ann. § 69–308 applies to a municipal corporation of a state other than Georgia, which engages in proprietary business within Georgia's boundaries.

The plaintiff argues that the *ante litem* notice requirement should not bar recovery for three reasons. First, she notes that actual notice would suffice under Tennessee law (T.C.A. § 23–3314(c)), and it would be unreasonable to augment the defendant's protection when it crosses the state line. Second, the plaintiff shows that a Georgia municipal corporation is stripped of its sovereignty when it conducts business out-of-state. *City Council of Augusta v. Hudson,* 88 Ga. 599, 15 S.E. 678 (1891). Third, the plaintiff argues that the equal protection clause requires that there be a rational explanation for protecting this defendant corporation to the detriment of the plaintiff, and because the state of Georgia has no valid interest in the sovereignty of the City of Chattanooga, the *ante litem* notice provision cannot operate to that foreign city's advantage.

The defendant's argument is a concise syllogism: Ga.Code Ann. § 69–308 covers "any municipal corporation"; The City of Chattanooga is a municipality; Ga.Code Ann. § 69–308 covers the City of Chattanooga. This argument is polished by reference to *City of Chattanooga v. State of Georgia*, 246 Ga. 99, 269 S.E.2d 5 (1980) where the Supreme Court held that the City of Chattanooga, d/b/a Electric Power Board, with respect to its operations in this state, "is a municipality of this state" for purposes of entitlement to the sales and use tax exemptions provided to all "municipalities of this state". Ga.Code Ann. § 92–3403a(C)(2)(d).

The Court has considered carefully the arguments of counsel, and holds that summary judgment in favor of the defendant must be granted.

■ The substantive law of Georgia controls the decision in this case. *Erie R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

■ The plaintiff's arguments are not compelling. While it may be true that the rights of this out-of-state defendant expand when it operates in this state, the law of the place of the wrong—lex loci delicti—has always been the choice of law rule in this state. *See e. g., Craven v. Brighton Mills Inc.*, 87 Ga.App. 126, 73 S.E.2d 248 (1952). Corporations and individuals who conduct business in this state may take advantage, but must also endure the vagaries of, this state's law. There is no reason why the City of Chattanooga cannot take advantage of this state's law when it operates in this state, even when that law is more favorable than Tennessee law. *Cf. Nevada v. Hall*, 440 U.S. 410, 421–24, 99 S.Ct. 1182, 1189–1190, 59 L.Ed.2d 416 (1979).

■ The plaintiff's equal protection argument is similarly without merit. The plaintiff does not contest the validity of Ga.Code Ann. § 69–308 generally; she only urges the Court to find it unconstitutional when utilized for the benefit of an out-of-

state municipality. The Court finds that the State has a legitimate interest in treating sister states' municipal corporations in the same way it treats its own municipal corporations. Needless to say, the defendant would have a stronger equal protection claim if the state did not treat it as domestic municipal corporations are treated. *Cf. WHYY v. Borough of Glassboro*, 393 U.S. 117, 89 S.Ct. 286, 21 L.Ed.2d 242 (1968).[1]

Plaintiff's final argument is that because Georgia municipal corporations lose their sovereign immunity when they exit the state, foreign municipal corporations must lose their sovereign immunity when they enter the state. In *City Council of Augusta v. Hudson*, 88 Ga. 599, 15 S.E. 678 (1891), the City was operating a bridge spanning the Savannah River which divides South Carolina and Georgia. The plaintiff alleged that the City negligently maintained the South Carolina side of the bridge causing the plaintiff and his mule and wagon to come to grief, having been "precipitated from the bridge." Justice Lumpkin refuted the city's argument that, according to South Carolina law, the city was absolutely immune from liability for actions of this sort:

> The City Council of Augusta certainly has no municipal or governmental functions to perform beyond the limits of this State. So far as keeping and maintaining this bridge for gain is concerned, this corporation entered the State of South Carolina to engage in a private business and enjoy the profits thereof. Consequently it must perform the duties and assume the burdens incident to carrying on this business. Whatever immunity, if any, from liability to actions of this sort it may have possessed at home, as a part of the government, the same was lost when it divested itself of the attributes of sovereignty by undertaking such a business in another State.

*id.* at 605, 15 S.E. 678. This holding comports with the decisions of numerous other

1. As discussed later, this Court does not believe that the *WHYY* decision is controlling in this case.

courts which recognize that sovereignty is a characteristic which only survives in the atmosphere of the municipality's home state. In 1924, the United States Supreme Court resolved a dispute between Georgia and Chattanooga involving the extraterritorial ventures of the State of Georgia. *Georgia v. City of Chattanooga,* 264 U.S. 472, 44 S.Ct. 369, 68 L.Ed. 796 (1924). There, the State of Georgia sought to prevent the City's exercise of eminent domain power, arguing that it was not just any ordinary landowner in Tennessee, but a sovereign state. The Court disagreed:

> Having acquired land in another state for the purpose of using it in a private capacity, Georgia can claim no sovereign immunity or privilege in respect of its expropriation.... The sovereignty of Georgia was not extended into Tennessee. Its enterprise in Tennessee is a private undertaking. It occupies the same position there as does a private corporation authorized to own and operate a railroad, and, as to that property, it cannot claim sovereign privilege or immunity.

*id.* at 480, 483, 44 S.Ct. at 370, 371. *See also, State v. City of Hudson,* 231 Minn. 127, 42 N.W.2d 546 (1950).

More recently, in *Hall v. University of Nevada,* 8 Cal.3d 522, 503 P.2d 1363 (1972), *aff'd, Nevada v. Hall,* 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979), the California Supreme Court held that the State of Nevada was subject to tort liability in California courts when an agent of Nevada allegedly committed a tort in California: "[w]hen the sister state enters into activities in this state, it is not exercising sovereign power over the citizens of this state and is not entitled to the benefits of the sovereign immunity doctrine as to those activities ..." *id.* at 1364.

█ In short, the City of Chattanooga is not a sovereign entity while it engages in business in this state. Yet, the State of Georgia is free to confer upon its sister states' municipal corporations any vestige of sovereignty which Georgia legislators deem proper. The language in *Hall,* quoted above, continued, "[The sister state has no immunity in this state] unless this state has conferred immunity by law or as a matter of comity." *id.* From the decision in *City of Augusta v. Hudson, supra,* it is evident that sovereign immunity should not be conferred on the foreign city. Yet, from *City of Chattanooga v. State of Georgia,* 246 Ga. 99, 269 S.E.2d 5 (1980), it is evident that, as a matter of comity (or generosity), the State of Georgia has decided that Chattanooga (and, of course, all other foreign municipal corporations) are still municipal corporations, albeit without any sovereign immunity.

The decision in *City of Chattanooga v. State of Georgia, supra,* is contrary to certain decisions in other states which do not extend tax exemptions to foreign municipal corporations doing business in the forum state. *See, e. g., City of Cincinnati v. Commonwealth,* 292 Ky. 597, 167 S.W.2d 709 (1942); *State v. City of Hudson,* 231 Minn. 127, 42 N.W.2d 546 (1950). These cases recognize that tax exemption is an attribute of a municipal corporation's sovereignty. When the municipal corporation ventures beyond its state's borders, it loses its sovereignty and its right to a tax exemption. These decisions also indicate that the Georgia Supreme Court's reliance on *WHYY v. Borough of Glassboro,* 393 U.S. 117, 89 S.Ct. 286, 21 L.Ed.2d 242 (1968) was probably misplaced. The *WHYY* court held that foreign nonprofit corporations must be afforded the same tax exemptions as those afforded to domestic nonprofit corporations. That situation is clearly distinguishable from the situation of a foreign municipal corporation seeking the benefits of a domestic municipal corporation.

Nevertheless, although it seems that the Georgia Supreme Court was not compelled by *WHYY* to recognize Chattanooga as a "municipality of this state" for tax purposes, it did.

The plaintiff urges this Court to recognize that there is a basic difference between adjusting economic rights between the State of Georgia and the City of Chattanooga in the tax context, and cloaking the city with a vestige of its sovereignty when an

individual of this state institutes an action against the City of Chattanooga.

There is a basic difference. The Court has not reached its decision without careful consideration of the fundamental difference between the City of Chattanooga *qua* Georgia taxpayer and the City of Chattanooga *qua* alleged tortfeasor. But in risking the hazards of prophesy, as this Court must under the *Erie* doctrine, the decision in the tax context is the surest guide.

The City of Chattanooga is a municipality within the meaning of Ga.Code Ann. § 69–308. Failure to provide the *ante litem* notice constitutes both a failure to exhaust remedies, and a failure to comply with the statute of limitations. *Ehlers v. City of Decatur*, 614 F.2d 54 (5th Cir. 1980); *City of Barnesville v. Powell*, 124 Ga.App. 132, 183 S.E.2d 55 (1971).

ACCORDINGLY, defendant's motion for summary judgment is GRANTED.