THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ANTONIO CARBONE D'ANGELO, Defendant and Appellant.

No. 8916. Argued December 2, 1941.—Decided December 15, 1941.

*Rafael Atiles Moréu* for appellant. *George A. Malcolm, Attorney General, R. A. Gómez, Prosecuting Attorney,* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

Antonio Carbone D'Angelo was convicted by the District Court of Ponce, on a trial *de novo,* of simple assault and battery for which he was sentenced to pay a fine of $5 and costs or to imprisonment for nonpayment thereof. He has appealed from that judgment, and in support of his appeal

he urges that the lower court erred in sentencing him without the *corpus delicti* having been proved, the testimony of the injured party, who failed to appear, being a vital element; in finding him guilty, in violation of the Sixth Amendment to the Constitution of the United States and of the Organic Act of Puerto Rico, as he was never confronted with the injured party whom he was entitled to cross-examine and to meet face to face; in rendering judgment against Antonio Carbone D'Angelo under a complaint against Antonio Carbonel de Angelus, without any evidence to show that they were one and the same person; in adjusting the conflict in the evidence; and, lastly, that the court abused its discretion in sentencing the defendant to pay a fine of $5 immediately after imposing on him a fine of $2 for the same offense, thus raising the penalty without any justification appearing from the record for reconsidering the sentence adversely to the defendant.

The first two assignments may be considered together. The appellant has failed to cite any authority in support thereof, and in our opinion they are absolutely without merit.

In order to prove the *corpus delicti* in a case of assault and battery it is not an indispensable requisite that the injured party should appear at the trial and take the stand. If there is evidence for the prosecution tending to show that the defendant assaulted the injured party, the *corpus delicti* is established, and it is unnecessary that the injured party in person should appear to testify to his having been assaulted.

Nor was there any violation of the provision of our Organic Act which secures to every accused the right to be confronted with the witnesses against him. The failure of the injured party to appear and take the stand at the trial was not at all prejudicial to the defendant. The right to be confronted with the witnesses for the prosecution consists in guaranteeing to every accused an opportunity to cross-examine them, and that the accused will not be convicted upon

depositions or *ex parte* affidavits. See 14 Am. Jur. 888, sec. 176. No error was committed.

The third error assigned was not committed either; for, although it is true that somewhere in the complaint the name of the defendant appeared as Antonio *Carbonel* de Angelus and elsewhere as Antonio *Carbone* de Angelus, the defendant in the court below never alleged that he was not the person charged, nor did he set up the question now raised for the first time on appeal. When testifying in his own behalf the defendant stated that his name was Antonio Carbone D'Angelo, so that, at least, his name Antonio and one of his surnames, Carbone, coincide with those which appear in the complaint. As to the surnames, "de Angelus" or "D'Angelo," they are so similar in their pronunciation, that any mistake in the information in the use of the latter was rather of a clerical nature. Application may be made, therefore, of the doctrine of *idem sonans* which is set forth in 45 C. J. 383, sec. 19, as follows:

"The law does not regard the spelling of names so much as their sound. Great latitude is allowed in the spelling and pronunciation of proper names, and in all legal proceedings, whether civil or criminal, if two names, as commonly pronounced . . . are sounded alike, a variance in their spelling is immaterial. Even slight difference in their pronunciation is unimportant; if the attentive ear finds difficulty in distinguishing the two names when pronounced, they are *idem sonans,* and although spelled differently, they are to be regarded as the same. The names will be presumed to be pronounced according to the ordinary rules of pronunciation of the English language, *unless it is proved* that they belong to another language and are pronounced differently in the language to which they belong, and also in the general usage of the community." (Italics ours.)

In the notes to the above-quoted section, numerous cases are cited where the doctrine in question has been applied:

Thus, in *Golson* v. *State,* 73 So. 753, it was held that where the defendant was charged under the name of "Golson," a motion to quash the verdict on the ground that his

correct name was "Gholston," could not be granted under the doctrine of *idem sonans,* as both names, although spelled differently, sounded or were pronounced similarly; that it was difficult for the ear to distinguish them and should be considered to be the same; and that the insertion of the letter "t" in the last syllable "son" constituted an immaterial variation of the sound.

In *Newbrough* v. *Moore,* 202 S. W. 547, it was held that the rule applied to the names "Newbraw" and "Newbrough."

In 1 Wharton Criminal Evidence, 10th ed., p. 290, sec. 96, it is said:

> "*Idem sonans* means of the same sound. . . . Hence, the rule in *idem sonans* is, that the variance is immaterial unless it is such as misleads the party to his prejudice."

The following are some of the names cited by Wharton where the doctrine has been applied: McLaughlin for Mc Gloffin; Usrey for Userry; Aughron for Autrum; Benedetto for Beniditto; Whyneard for Winyard.

We think that by reason of their sound in the Spanish language the names "de Angelus" and "D'Angelo" are *idem sonans* and that the defendant, by failing to object at all in the lower court, consented thereto. Consequently, the error assigned is nonexistent.

▮ The fourth assignment challenges the sufficiency of the evidence upon which the defendant was convicted, it being contended that the lower court erred in resolving the conflict in the evidence.

The evidence for the prosecution consisted solely of the testimony of policeman Francisco Rivera Díaz, and that for the defendant of his own testimony and that of the said policeman who was the complainant. The court in pronouncing sentence said:

> ". . . . The court is going to render judgment The defendant will please stand up. In the present case only two witnesses have testified: the defendant himself and Francisco Rivera Díaz, the com-

plainant policeman. Therefore, the evidence is conflicting and it is incumbent on the court to decide which witness does it believe. This is the only issue before the court. The court does not know why Blas Buono Petrilli, alleged to have been injured, has not been summoned to appear either in the municipal or in the district court. The court can not imagine a policeman capriciously bringing a complaint against a citizen. He might be mistaken as to the designation of the offense, or as to the way in which the same was committed, but in this case the court is not convinced and thinks that the policeman has not acted capriciously in filing the complaint. The court has also heard the testimony of defendant Antonio Carbone D'Angelo, and must take into account the self-interest of every defendant in his own case. Of course, in resolving the conflict of the evidence the court fully believes the witness Francisco Rivera Díaz, policeman and, therefore, finds you, Antonio Carbone D'Angelo, guilty and convicts you of simple assault and battery and, consequently, sentences you, Antonio Carbone D'Angelo, to pay a fine of $2 and, in default of such payment, to serve one day in jail for each dollar left unpaid, it being understood that this sentence is concurrent and not consecutive. All of which with costs.''

We have read the testimony given by the two only witnesses in the case, and we fail to find anything in the record to justify this court in disturbing the conclusion reached by the trial judge in resolving the conflict in the evidence.

The last assignment of error raises a question which is somewhat new in this jurisdiction. After the rendition by the lower court of the judgment just quoted, the attorney for the defendant moved to reconsider the same on the ground that under the evidence submitted the defendant was not guilty. When the attorney closed his argument on the motion, the court decided it as follows:

"In passing upon the motion to reconsider, the court thinks and declares that it has relied upon the testimony of the prosecuting witness, who recited the facts, which facts are in accord with the charge; and, confirming as it does the judgment of conviction against Antonio Carbone D'Angelo, defendant herein, *it is of the opinion that it has been too lenient regarding the penalty,* and finding him guilty, *sentences him to pay a fine of $5, or to be confined in jail one day* for each dollar left unpaid, with costs.'' (Italics ours.)

The defendant-appellant urges that the lower court abused its discretion in imposing on him a $5 fine shortly after having imposed on him a $2 fine, on the sole ground of having moved for the reconsideration of the sentence.

The only case in which this question was dealt with and, in one aspect thereof, decided by this court was *Arroyo* v. *People,* 41 P.R.R. 727. There the defendant was convicted of the offense of carrying a weapon and sentenced to one month in jail. On the same day the court, *motu proprio,* sent again for the defendant and sentenced him to three months in jail. On the ground that the sentence was void, the defendant sought his discharge on a writ of *habeas corpus* which was refused by the district court and this court, on appeal, affirmed the judgment and said:

"The recited judgment and possibly other parts of the record, show that all the facts of this case took place on the same day. The trial was had on the 24th and both alleged judgments were pronounced on the same date. The rule is unquestioned that the court may correct its judgment during the term in which it is pronounced. *King* v. *Price,* 6 East 326, 102 Comp. 1312, where Lord Ellenborough said a different judgment may be pronounced within the term. *Regina* v. *Fitzgerald,* 1st Salkeld 401, 91 Comp. 347, showed that the imprisonment might be increased during the term. These and other cases are cited by the court in *State* v. *Daugherty,* 30 N. W. 685, deciding the same principle.

"On the other hand, a consideration of *In re Sullivan,* 3 Cal. Ap. 193; *Ex parte Lange,* 18 Wall. 163; *Commonwealth* v. *Foster,* 122 Mass. 317; *United States* v. *Vayson,* 27 Philippine Reports 447, tends to show that once the execution of a judgment has begun, the court is powerless to make a correction. Mr. Justice Miller in *Ex parte Lange, supra,* shows that the principle underlying these decisions is something similar to a second jeopardy. The court in that case says that the reason why a man should not undergo a second or a severer judgment when the first is in process of execution, is the same or similar as in the case of a second trial, after a conviction or an acquittal. . . .

"*     *     *     *     *     *     *

". . . The appellant does not convince us that the municipal court lost power *to correct* its judgment." (Italics ours.)

The two doctrines set forth in the above quotations have been recognized by the authorities and the jurisprudence in the United States with certain limitations which we will set down further on. As to the proposition that once the execution of a judgment has begun, the court can not, even within the same term, correct the same in any way, the decisions are almost unanimous. See 24 C.J.S. 118, sec. 1589.

Now, as regards those cases where the execution of the sentence imposed originally on the accused has not begun, the rule, as stated in 24 C.J.S. 116, sec. 1588, is as follows:

"In the absence of constitutional or statutory regulations to the contrary the court has full control over its judgments, decrees, or orders during the term at which they were entered, or prior to such other time fixed, in which the cause passes beyond the jurisdiction of the court. Specifically, at any time during the term the court has power to reconsider the judgment, and to revise and *correct it* by mitigating and even *by increasing* its severity, where the original sentence has not been executed or put into operation. This, it may do on the motion of any party in interest or on its own motion. The trial court's exercise of this power to modify an authorized sentence rests within the discretion of such court, *but it should not be exercised arbitrarily and without sufficient cause, or except in a legal manner*. The trial court is, of course, not bound to revoke or modify a sentence simply because it has considered such a step or has even tentatively indicated its purpose to do so. Within the rule that a sentence may be modified during the term, it has been held that if accused has been sentenced irregularly, or inadvertently and without due consideration, or without compliance with the requirements and formalities of the law, it is a proper exercise of authority to resentence him in accordance with the law."

Although all the facts in *Arroyo* v. *People, supra,* are not stated in the opinion, it appears from the latter that what the municipal court did was to *correct* its judgment and this court recognized its power to do so. Possibly the case dealt with a violation of section 2 of the act which prohibits the carrying of arms in lawful meetings, the minimum penalty for which offense is three months in jail, and when the court realized that it had imposed only one month on the defendant,

it proceeded to correct its judgment by conforming it to the statute.

Be it as it may, there is no doubt that the general doctrine is to the effect that courts, prior to the execution of their judgments, are empowered to reconsider and correct them, either mitigating or increasing the penalty imposed. This may be done on motion of an interested party or *motu proprio*. Some courts hold that this power of trial courts is absolute. Thus, in *Cisson* v. *U. S.*, 37 F. (2d) 330, Judge Parker said:

"The power of the judge to modify and set aside judgments during the term is an ancient one and founded upon the soundest reasons. Upon more mature consideration he may, and frequently does, decide that a sentence imposed during the term should be lightened or increased. He may learn additional facts about a case which show the original sentence to be entirely inadequate or unreasonably harsh; . . ."

See to the same effect: *State* v. *McLamb*, 166 S.E. 507, and *State* v. *Young*, 187 S.E. 561, and other cases cited in C.J.S., *supra*.

Other courts, however, adhere to the rule but with the limitation that courts can not exercise said power arbitrarily and without justification. A typical case is that of *Meaders* v. *State*, 22 S.E. 527, where the facts are similar to those in the case at bar. Meaders was sentenced to pay a $25 fine or serve one year in prison, and after his attorney had announced that he would file a motion for new trial, the court reconsidered its judgment and sentenced the defendant to a $50 fine or to imprisonment for one year. The Supreme Court said:

"As a general rule, the judgments of a court are within its breast until the end of the term, and a sentence may be amended at any time during the term and before execution has begun. 21 Am. & Eng. Enc. Law, 'Sentence,' p. 1084. And see *Railroad Co.* v. *Jackson*, 86 Ga. 684, 13 S. E. 109, and citations. But, *while the court had a right to change the sentence at the time he did, it was*

*not proper to change it because counsel for the accused gave notice of an intention to move for a new trial. The presumption is that the sentence first imposed was, in the opinion of the court, a proper punishment for the offense, and no further reason for changing it appears from the record than that stated in the bill of exceptions.* While we do not hold that the judgment of the court below should be reversed because of the change of the sentence under these circumstances, we deem it proper to signify our disapproval of the practice.'' (Italics ours.)

Although the judgment in the above case was not reversed because of the mere fact of reconsideration, it was reversed on another ground.

From the foregoing considerations, it seems to us that we should confirm the doctrine that trial courts are empowered to reconsider their judgments, prior to their execution, either on motion of a party or *motu proprio,* and to conform the same to the statute, either in order to correct any mistake incurred when imposing them or in order to conform them to any state of facts duly proved by either side.

We think, however, that such power can not be exercised arbitrarily and without justification. The presumption is that where a court enters a judgment, it does so taking into account all the attendant proven facts. To increase the punishment imposed merely because the defendant moves for a reconsideration of the judgment, even where the original sentence imposed was light, as happened in the case at bar, and without anything appearing from the record to show that the court had before it further evidence, does not constitute a reasonable exercise of the discretionary power vested in lower courts.

Therefore, the judgment rendered should be modified by reducing the penalty imposed to the payment of a $2 fine and, in default of such payment, to confinement in jail one day for each dollar left unpaid with the costs, and, as so modified, the judgment is affirmed.